CSD 1001C [11/15/04]
Name, Address, Telephone No. & I.D. No.
Julia W. Brand, Esq.  (SBN 121760)
Enid M. Colson, Esq.  (SBN 189912)
Liner Yankelevitz Sunshine & Regenstreif, LLP
1100 Glendon Ave., 14th Floor
Los Angeles, CA 90024-3503
(310) 500-3500

**Order Entered on**
**February 19, 2009**
**by Clerk U.S. Bankruptcy Court**
**Southern District of California**

### UNITED STATES BANKRUPTCY COURT
#### SOUTHERN DISTRICT OF CALIFORNIA
135 West "F" Street, San Diego, California 92101-6991

In re

STEAKHOUSE PARTNERS, INC., a Delaware corporation,

Debtor-in-Possession.

BANKRUPTCY NO.
08-04147-11 (Jointly Administered with Case Nos. 08-4152-11 & 08-4153-11)

| | |
|---|---|
| Date of Hearing: | November 25, 2008 |
| Time of Hearing: | 2:00 p.m. |
| Name of Judge: | The Hon. James W. Meyers |

*SECOND AMENDED* ORDER AUTHORIZING AND APPROVING THE SALE OF ASSETS OF THE BANKRUPTCY ESTATE RELATED TO THE DEBTORS' RESTAURANT LOCATED IN GLENDALE, ARIZONA FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND AUTHORIZING THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' UNEXPIRED LEASE FOR THE GLENDALE, ARIZONA RESTAURANT

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through seven (7) with exhibits, if any, for a total of twenty-one (21) pages, is granted.  Motion Docket Entry No. 394.

//

//      *A copy of a redlined version of the relevant pages of the second amended order is attached hereto as Exhibit "B"

//

//

//

DATED:    February 19, 2009

Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011 that the relief in the order is granted by the court.

Submitted by:

Enid M. Colson, Esq. (SBN: 189912)
Attorney Name

By:    /s/ Enid M. Colson
Attorney for ☒ Movant  ☐ Respondent

Judge, U

Judge, United States Bankruptcy Court

0078506/001/ 413481v04

CSD 1001C [11/15/04] Page 2 of 7
Order on Motion re Sale of Assets (Glendale, AZ)
Debtor: *In re Steakhouse Partners, Inc.*                                                        Case No. 08-04147-11

Upon consideration of the Motion, dated November 19, 2008 and entered as docket number 394 (the "Motion") of the Debtors Paragon Steakhouse Restaurants, Inc. and Paragon of Michigan, Inc., debtors and debtors-in-possession herein (the "Debtors"), requesting the issuance and entry of an order authorizing the Debtors' sale of certain assets of the bankruptcy estate (the "Sale") relating to certain of the Debtors' restaurants, the Court having subject matter jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C. § 1334; consideration of the Motion and the relief requested therein being a "core" proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; due and proper notice of the Motion having been provided, it appearing that no other notice need be given; and a hearing on the Motion having been waived as no objections to the Motion were received; and upon the record before the Court; it appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates and creditors; and after due deliberation, and sufficient cause appearing therefore,

IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:

A.      Notice of the Motion and of the hearing on the Motion was given in accordance with applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

B.      The notice provided of the Motion and of the hearing was adequate and sufficient under the circumstances, and any otherwise applicable requirement for notice is hereby waived and dispensed with.

C.      Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

D.      The Contract for Assignment and Assumption of Leasehold Interest between Joel LaSalle, or an assignee of Joel LaSalle which shall be owned entirely by Joel LaSalle (the "Purchaser"), and Debtors Paragon Steakhouse Restaurants, Inc. ("Paragon Steakhouse") and Paragon of Michigan, Inc. ("Paragon of Michigan") dated as of November 19, 2008 (the "Sale Agreement") a copy of which is attached hereto as Exhibit "A" for the purchase of the Debtors' Restaurant in Glendale, Arizona  (the "Glendale Restaurant"), the assets related thereto, the real property lease for the Glendale Restaurant premises, the Debtors' liquor license for the premises and a non-exclusive license of the Debtors' interest in the

0078506/001/ 413481v04

*Signed by Judge James W. Meyers February 19,2009*

CSD 1001C [11/15/04] Page 3 of 7
Order on Motion re Sale of Assets (Glendale, AZ)
Debtor: *In re Steakhouse Partners, Inc.*                                     Case No. 08-04147-11

service or trademarks or tradenames associated with each restaurant each as more particularly described in the Motion and the Sale Agreement (collectively, the "Glendale Assets") was negotiated and proposed and has been entered into by the parties in good faith within the meaning of section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion; the Purchaser is a good faith purchaser of the assets within the meaning of section 363(m) of the Bankruptcy Code entitled to the protections thereof; the Court has determined that the legal and factual bases set forth in the Motion establishes just cause for the relief granted herein; and the Court has determined that the relief granted herein is in the best interests of the Debtors and their estates.

E.       At least one of the subsections of Section 363(f) of the Bankruptcy Code is satisfied with respect to each of the parties identified in the Motion holding or asserting any lien, claim, encumbrance or other interest with respect to any of the Glendale Assets.

BASED ON THE FOREGOING AND THE FINDINGS AND CONCLUSIONS STATED ORALLY IN THE RECORD, AND GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.       The Motion is granted.

2.       The Debtors are hereby authorized and empowered to enter into the Sale Agreement, and all exhibits thereto, as modified consistent with the terms in the Motion and recited on the record at the hearing, and to convey to the Purchaser all of their right, title, and interest in and to the restaurant business operated at the Sandy Restaurant including the Glendale Assets, as described more fully in the Sale Agreement, pursuant to Sections 105, 363(b) and 363(f) of the Bankruptcy Code, and the Sale Agreement is hereby approved in its entirety in the form annexed hereto as Exhibit A and incorporated herein by reference.

3.       The Debtors, the Purchaser and each of their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to effectuate the Sale Agreement and the related actions set forth therein without the necessity of a further order of this Court. The Sale Agreement and any related documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties and in accordance with the terms thereof, without further order of the Court,

0078506/001/ 413481v04

*Signed by Judge James W. Meyers February 19,2009*

CSD 1001C [11/15/04] Page 4 of 7
Order on Motion re Sale of Assets (Glendale, AZ)
Debtor: *In re Steakhouse Partners, Inc.*                                                    Case No. 08-04147-11

provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors'
bankruptcy estates.

4.      The Purchaser is deemed to have purchased the Glendale Assets, including the assignment of the
unexpired lease for the premises located at 8172 W. Bell Road, Glendale, Arizona 85308 (the "Glendale Lease"), in good
faith pursuant to Section 363(m) of the Bankruptcy Code so that the reversal or modification of the Sale Order does not
affect the validity of the transactions as to the Purchaser.

5.      All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the
assumption by the Debtors and assignment to Purchaser having been satisfied, subject to and conditioned upon the
consummation of the Sale on the Closing Date, the Debtors are hereby authorized (a) to assume and assign the unexpired
Glendale Lease to Purchaser in accordance with the terms of the Sale Agreement, (b) to take any and all actions necessary
to consummate and effectuate the assumption and assignment of the Glendale Lease, and (c) take any and all actions
necessary or appropriate in connection therewith, including, without limitation, executing any documents in connection with
the assumption and assignment of the Glendale Lease.

6.      The Debtors are authorized to satisfy all closing costs associated with the sale of the Glendale Assets from
the sale proceeds.

7.      Pursuant to Section 363(f) of the Bankruptcy Code, effective upon closing, the sale of the Glendale Assets
will vest in the Purchaser all right, title and interest of the Debtors and the bankruptcy estates in the Glendale Assets, free
and clear of all liens, claims or interests, including all security interests, liens, mortgages, encumbrances, title defects,
claims, liabilities, obligations, franchise or similar rights, and rights of first offer or first refusal or similar adverse interests of
any kind or character, including, but not limited to:  (a) the claims of creditors listed on the Debtors' bankruptcy schedules,
(b) the claims by parties who have filed claims or requests for special notice with the Court, and do not assert a lien or
interest in the Glendale Assets, and  (c) the liens, claims or interests asserted by the entities listed below (collectively, the
"Affected Interests"):

(i)      The Class 4 Creditor Trust (first priority security interest in Debtors' assets);

*Signed by Judge James W. Meyers February 19,2009*

CSD 1001C [11/15/04] Page 5 of 7
Order on Motion re Sale of Assets (Glendale, AZ)
Debtor: *In re Steakhouse Partners, Inc.*                                    Case No. 08-04147-11

      (ii)      Rewards Network Establishment Services, Inc. f/k/a Idine Restaurant Group, Inc. ("Idine") (alleged leasehold deed of trust); and

      (iii)     Maricopa County Treasurer for a lien for personal property taxes of $2,957.09.

Purchaser shall have no liability for any obligation of the Debtors or the Debtors' estates related to the Sandy Assets or the operation of the Debtors' business except as provided in the Sale Agreement. Purchaser's acquisition of the Sandy Assets shall not subject Purchaser to liability for claims against the Debtors or the Debtors' estates by reason of any theory of successor or transferee liability. Nothing in the foregoing shall relieve the Purchaser of any monetary or non-monetary obligation under the Glendale Lease.

8.      Unless the holders of the Affected Interests have agreed to other treatment, or otherwise provided herein, their liens, claims or interests shall attach to the proceeds of the sale with the same force, effect, validity and priority that previously existed against the Glendale Assets except that the alleged liens of Idine, including the leasehold deed of trust of Idine shall not attach to the proceeds of the sale as that interest in the Debtors' assets was previously released by Idine and except for the lien of the Maricopa County Treasurer which shall be satisfied from the sale proceeds at closing in the amount of $2,957.09.

9.      The Debtors shall deposit the proceeds of the sale after payment of closing costs, except for the Cure Amount (as defined below), in a segregated Debtor-in-Possession account pending further order of the Court regarding distribution of the proceeds of the sale. The Cure Amount payable to Realty Income shall be paid at or promptly after Closing on the Sale.

10.     This Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the Sale, (1) all Affected Interests have been and hereby are adjudged and declared to be unconditionally released as to the Glendale Assets and (2) the conveyance of the Glendale Assets has been made free and clear of all Affected Interests.

11.     The Debtors are authorized to execute any such releases, termination statements, assignments, consents or instruments on behalf of any third party, including the holders of any Affected Interest, that are necessary or appropriate to effectuate or consummate the Sale.

*Signed by Judge James W. Meyers February 19,2009*

CSD 1001C [11/15/04] Page 6 of 7
Order on Motion re Sale of Assets (Glendale, AZ)
Debtor: *In re Steakhouse Partners, Inc.*                                                    Case No. 08-04147-11

12.    Purchaser has not assumed any liabilities of the Debtors except as provided in the Sale Agreement.

13.    All requirements of 11 U.S.C. §§ 365(b), (c), and (f), are deemed satisfied as provided in this order.

14.    The Debtors are authorized to assume and assign to the Purchaser the Lease with Realty Income upon payment of the cure amount owing under the Glendale Lease as of the Closing Date. The Cure Amount (the "Cure Amount") is $163,844.41 as of November 30, 2008 and includes rent and sales tax through November 30, 2008 plus interest and property taxes. The Purchaser will separately pay at closing rent in the amount of $6,655.00 and sales tax of $185.75 which amount is included in the Cure Amount. In the event the Sale does not close by November 30, 2008, the Purchaser timely pay rent to Realty Income as provided in the Glendale Lease. To the extent not paid, such rent shall be added to the Cure Amount. The Cure Amount shall be paid at Closing from the proceeds of the sale at Closing to the extent not paid prior to the Closing Date. The Purchaser shall pay its share of the real property taxes owing with respect to the Glendale Lease in the amount of $4,251.92 to Realty Income by December 15, 2008.

15.    The payment of the Cure Amount to Realty Income shall forever bar and discharge any claim of Realty Income against the Debtors and their bankruptcy estates, and Realty Income's sole and exclusive remedy as to the Debtors shall be to receive the Cure Amount with respect to the Sandy Lease. After the assumption and assignment of the Glendale Lease, the Debtors shall have no further liability for any breach of the Glendale Lease that may occur after the assignment in accordance with Bankruptcy Code section 365(k).

16.    The Glendale Assets conveyed hereunder shall be conveyed on an "as-is, where-is" basis and "with all faults," and the Purchaser hereby waives and releases any warranties of any kind and nature with respect to the Glendale Assets conveyed hereunder, including any warranties of merchantability and of fitness for a particular purpose.

17.    The Debtors are authorized and directed to execute, upon request by Purchaser, one or more assignments evidencing the conveyance of the Glendale Assets to the Purchaser.

18.    Except as otherwise set forth in this Order, this Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with the order and the relief provided for herein, including, without limitation, to protect the

0078506/001/413481v04

*Signed by Judge James W. Meyers February 19,2009*

CSD 1001C [11/15/04] Page 7 of 7
Order on Motion re Sale of Assets (Glendale, AZ)
Debtor: *In re Steakhouse Partners, Inc.*                                              Case No. 08-04147-11

Debtors, and/or the Purchaser from interference with the Sale, and to resolve any disputes related to the Sale or arising

under the Sale Agreement or the implementation thereof.

19.    The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten (10)

days are hereby waived, and this Order shall be effective immediately upon entry thereof.

20.    This Order shall be binding on all creditors (whether known or unknown) of the Debtors, all successors and

assigns of the Purchaser, the Debtors, their affiliates and any subsequent trustee(s) appointed in the Debtors' chapter 11

case or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection or revocation.

21.    The Purchaser is a party-in-interest and shall have the ability to appear and be heard on all issues related

to or otherwise connected to the sale.


** END OF ORDER **

*Signed by Judge James W. Meyers February 19,2009*

# EXHIBIT A

## CONTRACT FOR ASSIGNMENT
## AND ASSUMPTION OF LEASEHOLD INTEREST

THIS CONTRACT FOR ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST (this "Contract") is made and entered into on this 18th day of November, 2008 by and between Joel LaSalle, or his assignee having the principal office address at c/o Golden Braids Oasis, LLC 151 South 500 East, Salt Lake City, UT 84102 ("Buyer"), and Paragon Steakhouse Restaurants, Inc., a Delaware corporation and Paragon of Michigan, Inc., a Wisconsin corporation, each having its principal office address c/o Susan Schulze-Claasen at 8057 Raytheon Road, Suite 1, San Diego, CA 92111 (collectively, "Seller"). Buyer and Seller may hereafter be collectively referred to as "Parties" or singularly as "Party."

## W I T N E S S E T H :

WHEREAS Seller is the lessee of that certain premises located at 8172 W. Bell Road, Glendale, AZ 85308 (the "Premises") pursuant to that certain lease between Seller, as tenant, and Realty Income Corp., as landlord (the "Landlord"), dated April 7, 1995 (the "Lease"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference;

WHEREAS there are certain buildings, structures and improvements located on the Premises (the "Improvements");

WHEREAS Buyer desires to purchase all of Seller's right, title and interest in and to the Lease and the Improvements and the assets related to the operation of Seller's business on the Premises, and Seller agrees to grant, bargain, sell and assign to Buyer all of Seller's right, title and interest in and to the Lease and the Improvements and Seller's business on the Premises;

WHEREAS Buyer agrees to assume all of Seller's rights, duties and liabilities under the Lease and in connection with the Improvements upon the terms and conditions set forth in the Assignment and Assumption of Lease (the "Assignment"), a copy of which is attached hereto as Exhibit B and incorporated herein by reference; and

WHEREAS Seller has filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California, (the "Bankruptcy Court") and is required to obtain approval from the Bankruptcy Court to consummate the transactions contemplated by this Contract;

NOW THEREFORE, in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer, as of the Effective Date, agree as follows:

1.    INCORPORATION. The foregoing recitals are incorporated herein by this reference.

2.    EFFECTIVE DATE. The "Effective Date" of this Contract shall be the date the last Party hereto executes this Contract.

Page 1

LA_DOCS\795888.3[W2000]

3.    SUBJECT PROPERTY. Seller is the tenant and the owner of the possessory interest in the Premises pursuant to the terms and conditions of the Lease (the "Leasehold Estate"). Seller is the owner of or has a possessory interest in that certain furniture, fixtures and equipment located on the Premises and identified on Exhibit 1 to the "Bill of Sale" (hereafter defined) (the "Equipment"), and the owner of food, beverage and related inventory used in the operation of the business (the "Business") and located on the Premises (the "Inventory"). Seller is the owner and holder of a liquor license with respect to the Business operated at the Premises (the "Liquor License") and is the owner and holder of all trademarks and tradenames ("Tradenames") used and associated with the Business. Finally Tenant is the owner of other assets associated with the operation of the Business, including but not limited to packaging supplies, tableware, glassware, cook ware and utensils, menus, recipes, operations manuals, training manuals, other manuals relative to the Business, machinery, furniture, fixtures and other equipment, small wares, all transferable government licenses and permits, copies of all records and files relating to the Business, customer lists), fictitious business names, logos, signs and advertising materials, telephone and fax numbers, web sites, URL names, e-mail addresses, vendor lists and catalogs, goodwill, distribution rights, and employee lists and information ("Other Assets"). The Leasehold Estate and the Improvements shall sometimes hereafter be referred to collectively as the "Real Property").

4.    ASSIGNMENT AND ASSUMPTION. On the Closing Date (hereafter defined), Buyer and Seller shall execute and deliver to each other the Assignment.

5.    SALE OF EQUIPMENT, INVENTORY AND OTHER ASSETS. On the Closing Date, Seller shall grant, bargain, sell and convey to Buyer, by bill of sale in the form attached hereto as Exhibit C ("Bill of Sale"), all of Seller's right, title and interest in and to the Equipment, Inventory, Liquor License and Other Assets, each in its "AS-IS" condition without representation or warranty of any kind from Seller, and free and clear of all liens, encumbrances and claims. The Seller shall grant to the Buyer a non-exclusive license of the Tradename Carvers Steak and Chops used in connection with the operation of the Business at the Premises in the form of Exhibit D hereto. For the avoidance of doubt, the assets sold shall not include POS systems, leased or rented Equipment, deposits or credit card receipts.

6.    PURCHASE PRICE. On the Closing Date, Buyer agrees to pay to Seller the amount of $192,897.56 at Closing (the "Purchase Price") in consideration of the consummation of the transaction contemplated herein. The Purchase Price shall be paid by cashier's check, certified check or by wire transfer of immediately available funds to Seller at Closing.

7.    ESCROW DEPOSIT. Buyer shall deliver $10,000.00 in form of a cashier's check, wire transfer or other immediately available funds to Seller simultaneously with the execution of this Contract (the "Deposit"). Seller shall deposit the Deposit in a separate interest bearing account approved by the Bankruptcy Court for the disposition by Seller of certain real estate assets (the "Paragon Lease Escrow Account") and maintain the Deposit in accordance with the terms and conditions of this Contract. The term "Deposit" shall also include any interest earned thereon.

LA_DOCS\795888.3[W2000]

8.    **CONDITIONS PRECEDENT.**

a.    **Conditions.** The following are conditions precedent to Buyer's obligation to consummate the transaction contemplated by this Contract ("Conditions"), each of which must be met prior to Closing:

i.    Transfer of the Liquor Licenses to Buyer, or in the event such transfer cannot be accomplished within seven days after entry of an Order by the Bankruptcy Court approving the sale, entry by Buyer into a management agreement or other agreement or permit for temporary use of the Liquor License pending completion of the transfer of the Liquor License; and

ii.    Entry of an order of the Bankruptcy Court approving the assignment of the Lease and the sale of the Property to Buyer free and clear of liens, claims and encumbrances.

b.    **Costs of Buyer.** Buyer shall pay all costs incurred by it in satisfying the Conditions, and Buyer shall indemnify and hold Seller harmless from any claims, damages, expenses, liabilities, liens or judgments, including costs, expenses and attorneys' fees resulting from the failure to pay such costs.

9.    **RIGHT OF ENTRY.** To the extent permitted by the Lease, Seller grants Buyer the right to enter upon the Premises, upon prior written notice to Seller, to conduct its investigations, including, without limitation, surveys, site analyses, soils tests, engineering studies, and other investigations. Buyer indemnifies and holds Seller and its agents, employees, officers and representatives free and harmless from any cost, expense, lien, judgment, damage, liability or claim, including reasonable attorneys' fees and costs which Seller may suffer, incur or for which Seller may be held responsible or liable, by reason of injury, including death, to any person or damage to any property, including the Subject Property, that may occur and that is caused by the activities of Buyer in, on or about the Premises prior to Closing. Buyer's indemnification of Seller as provided in this Section shall survive Closing or termination of this Contract. Buyer agrees that it shall comply with all applicable laws in its activities on the Premises prior to Closing, that no liens shall be filed against the Real Property prior to Closing as a result of Buyer's activities on the Premises (and, if any such liens are filed, Buyer shall promptly discharge the same) and that Buyer shall, as reasonably required, repair any damage or holes to the Subject Property, and remove any cuttings or other residue from sampling, caused by Buyer's activities on the Premises prior to Closing. Upon Buyer's written request, Seller shall make all key Seller employees at the Premises reasonably available for interview by Buyer.

Seller's grant of this right of entry to Buyer shall in no way establish an agency relationship between Seller and Buyer, nor shall this Contract be deemed or construed as constituting the consent or request of Seller, either express or implied, for the performance of any labor or the furnishing of any materials to the Premises or any part thereof.

10.    **LIQUOR LICENSES.** The application costs for processing the transfers will be borne by Buyer. Seller agrees to cooperate with Buyer in effectuating the transfer and sign all

LA_DOCS\795888.3[W2000]

*Signed by Judge James W. Meyers February 19,2009*

customary documents. Further, Seller agrees that a sign announcing the intended transfer of the Liquor License will be posted conspicuously at the Premises, if so required.

11.   AS-IS SALE.

a.   <u>As Is, Where Is.</u>  Seller and Buyer acknowledge and agree that, except as otherwise expressly provided for elsewhere in this Contract, neither Party has made any representations, warranties, or agreements as to any matter concerning the Subject Property, or the suitability for Buyer's intended use thereof. Buyer represents and warrants to Seller that Buyer has made or will make its own independent inspection and investigation of the Subject Property, and is acquiring the Subject Property in its "AS-IS," "WHERE-IS" condition, with all faults.

b.   <u>Reports.</u>  Buyer intends to rely solely on its own inspection and investigation of the Subject Property. Upon request, Seller will, however, provide whatever title, survey, environmental and similar due diligence reports it possesses in its files with respect to the Subject Property (the "Reports") to Buyer. The Reports, to the extent available, will be provided solely as an accommodation to Buyer, without representation or warranty of any nature or kind from Seller. Buyer acknowledges that Seller has no knowledge and makes no representation or warranty as to the accuracy or reliability of the Reports, if any, and reliance by Buyer on the information contained in the Reports, if any, is undertaken by Buyer at its own risk without liability to Seller.

c.   <s>Representation of Buyer. Buyer represents and warrants that it has</s> sufficient financial resources to provide adequate assurance of future performance under the Lease as required to consummate an assignment and assumption of the Lease under Section 365(f)(2)(B) of the Bankruptcy Code.

d.   <u>Waiver and Release.</u>  No agreement, warranty or representation, unless expressly contained or provided for herein, shall bind Seller. Buyer releases Seller, any parent, subsidiary or other affiliate of Seller, and any officers, directors, brokers, contractors and representative of Seller and their respective affiliates from, and waives any and all causes of action or claims against any such persons for (i) any liability arising by reason of any statement, representation, warranty, promise, or agreement, if any, unless expressly set forth in this Contract; (ii) any and all liability attributable to any physical conditions of or at the Subject Property; and (iii) any and all liability resulting from the failure of the Subject Property to comply with any applicable laws.

12.   CLOSING.   The Closing shall occur within seven days after entry of the Order by the Bankruptcy Court approving the sale, unless such date is extended by the Parties in writing (the "Closing Date"). The Closing shall be held at the offices of Seller. At Closing, Seller shall convey the Leasehold Estate to Buyer by the Assignment free and clear of all monetary liens, claims and encumbrances, and Seller shall convey title to the Subject Property to Buyer by the Bill of Sale free and clear of all monetary liens, claims and encumbrances. The Seller shall also execute and deliver the non-exclusive license for the Tradename at Closing. All Equipment will be located on the Premises on the Closing Date and will be in substantially the same condition as the date of this Agreement.

Page 4

LA_DOCS\795888.3[W2000]

13.    <u>COMMISSIONS; PRORATIONS.</u>

a.    <u>Commissions.</u>  Each Party represents and warrants to the other Party that it has not entered into any contracts with any brokers or finders nor has it obligated itself to pay any real estate commissions or finders' fees on account of the execution of this Contract or the Closing.  Each Party ("Indemnifying Party") indemnifies and holds the other Party harmless from any claims, damages, expenses, liabilities, liens or judgments (including costs, expenses and reasonable attorneys' fees in defending the same) which arise on account of any claim that real estate commissions or finders' fees are payable, other than to Broker as set forth herein, as a result of any agreement or understanding with the Indemnifying Party and have not been discharged in their entirety.  The indemnification provided in this Section shall survive Closing or termination of this Contract.

b.    <u>Cure Costs.</u>  At or prior to Closing, Seller shall pay or otherwise discharge and satisfy all costs required to cure defaults under the Lease and as provided under Section 365(b)(1) of the Bankruptcy Code.  In the event a landlord demands a cure amount which is disputed by any party in interest (a "Disputed Cure Amount"), the Debtors shall pay the undisputed portion of the Cure Amount at Closing and shall place sufficient funds from the sale proceeds to satisfy the Disputed Cure Amount in a segregated account until entry of an order establishing the cure amount.  At which time, the Seller shall pay the cure amount to the landlord and any excess funds held in the segregated account shall be released to the Debtor.  Buyer shall be responsible for all costs, charges, taxes and expenses accruing under the Lease after Closing.

c.    <u>Proration of Personal Property Taxes.</u>  Personal property taxes and assessments levied against the Equipment shall be prorated on a per diem basis as of the Closing Date with Seller being liable for all such taxes and assessments accruing prior to and on the Closing Date and Buyer being liable for all such taxes and assessments accruing after the Closing Date.  If the personal property taxes and assessments are not fixed for the current year at the time of Closing, the apportionment of such taxes and assessments shall be based upon the tax rate for the preceding year applied to the latest assessed valuation, with the proration to be a final settlement between the Parties.

d.    <u>Proration of Real Estate Taxes.</u>  Real estate taxes will be prorated between Buyer and Seller as of the Closing.  If the real estate tax proration is based on an estimate with such proration to be a final settlement between the Parties

e.    <u>Allocation of Costs.</u>  To the extent not disposed of by the Order, Buyer shall pay any and all transfer or sales taxes, title coordination fees and documentary stamp fees, if any, relating to the sale of the Subject Property.  Each Party agrees to promptly execute any documents reasonably required to be filed in connection with the transactions contemplated under this Contract.  In addition, Buyer shall pay, at its sole cost and expense, all title costs and title policy premiums and survey costs, if any, costs associated with the preparation of any mortgage or other financing documents used by Buyer in connection with the sale of the Real Property hereunder, all recording fees and Buyer's Broker's fees incurred in connection with the transaction contemplated herein.

Page 5

   f.   Utilities.  Seller shall pay all utilities in accordance with the terms of the Lease accruing prior to and on the Closing Date, and Buyer shall pay all utilities in accordance with the terms of the Lease, accruing after the Closing Date.

   14.   CONDEMNATION; RISK OF LOSS.  If, prior to the Closing Date, any governmental agency having the power of condemnation decides to acquire any portion of or any interest in the Real Property, which Buyer reasonably believes to be necessary to the development and successful operation of the Real Property, Buyer may:  (a) terminate this Contract by notice to Seller prior to Closing; or (b) Buyer may complete the transaction contemplated herein with no abatement in Purchase Price, in which event any right to condemnation proceeds or claims shall be governed by the terms of the Lease and shall be assigned to Buyer along with the Lease.  Seller agrees to give Buyer prompt notice of any known threat or act of condemnation of the Real Property, and Buyer shall have five days from receipt of such notice within which to make the election described in this Section.  If this Contract is terminated as provided in this Section, Seller shall forthwith refund the Deposit to Buyer.  If the Real Property is substantially damaged by fire, flood, or other casualty between the date of this Contract and the Closing Date, Buyer may (i) terminate this Contract, and the Deposit shall be returned to Buyer; or (ii) complete the transaction contemplated herein with no abatement in Purchase Price, in which event any right to insurance proceeds or claims shall be governed by the terms of the Lease and shall be assigned to Buyer along with the Lease.

   15.   NOTICES.  All notices, requests, demands, or other communications (collectively, "Notices") hereunder shall be in writing and given by (a) established express delivery service which maintains delivery records requiring a signed receipt; (b) hand delivery; or (c) certified or registered mail, postage prepaid, return receipt requested to the Parties at the following addresses, or at such other addresses as the Parties may designate by Notice in the above manner.

To Buyer:        Joel LaSalle or assignee
                 c/o Golden Braid Oasis, LLC
                 151 South 500 East
                 Salt Lake City, UT  84102

To Seller:       Paragon Steakhouse Restaurants, Inc.
                 c/o Susan Schulze-Claasen
                 8057 Raytheon Road, Suite 1
                 San Diego, CA 92111

   Notices shall be effective (i) the next day following the date sent by an established express delivery service which maintains delivery records requiring a signed receipt; (ii) upon receipt by the addressee of a hand delivery; or (iii) three days following the date of mailing via certified or registered mail, postage prepaid, return receipt requested.

   16.   ATTORNEYS' FEES.  If a Party commences a legal proceeding to enforce any of the terms of this Contract, the prevailing Party in such action shall have the right to recover

Page 6

LA_DOCSV795888.3[W2000]

*Signed by Judge James W. Meyers February 19,2009*

reasonable attorneys' fees and costs from the other Party to be fixed by the court in the same action.

17.    EXHIBITS.  All Exhibits attached hereto are incorporated herein by this reference.

18.    MISCELLANEOUS.  The terms, covenants and conditions herein contained shall be binding upon and inure to the benefit of the Parties and their heirs, successors, transferees and permitted assigns.  Buyer shall not assign this Contract or any rights hereunder to anyone except with the prior written consent of Seller.  Seller may freely assign this Contract or any rights hereunder.  This Contract constitutes the entire agreement between the Parties with respect to the subject matter hereof and may only be modified, amended or waived by a subsequent writing executed by both Parties.  This Contract shall be interpreted and construed only by the contents hereof, and there shall be no presumption or standard of construction in favor of or against either Seller or Buyer.  The headings used herein are for convenience only and shall in no way modify or restrict any of the provisions hereof or be used to construe any provision.  This Contract shall be construed and enforced in accordance with, and governed by, the laws of the State where the Real Property is located, without regard to the choice of law provisions of such state.  The individuals executing this Contract represent and warrant that they have the power and authority to do so, to bind the entities for whom they are executing this Contract and that all necessary action has been taken in order to execute and deliver this Contract.  Jurisdiction and venue shall be in the Bankruptcy Court, unless and until a different jurisdiction is designated by Seller through a chapter 11 plan that has been confirmed and gone effective.

19.    DEFAULTS.

a.    Seller's Damages.  In the event Buyer shall default in performance of the terms and conditions of this Contract, in addition to all other remedies available to Seller at law and in equity, Seller shall be entitled to terminate this Contract and retain the Deposit.

b.    Buyer's Liquidated Damages.  In the event Seller shall default in performance of the terms and conditions of this Contract, Buyer shall be entitled, as its sole and absolute remedy for such failure, to terminate this contract in which event the Deposit will be returned to Buyer ("Buyer's Liquidated Damages") as liquidated damages for such failure of the Closing with administrative priority under Bankruptcy Code section 503(b)(1)(A).  Seller acknowledges that it is extremely difficult and impractical to ascertain the extent of the detriment and damages of Buyer caused by the failure of the close of the sale and the parties agree that the Buyer's Liquidated Damages is a reasonable estimate of Buyer's damages and that such amount shall be in lieu of any other monetary or other relief to which Buyer may otherwise be entitled by virtue of this contract or by operation of law, and that Buyer shall be entitled to the Buyer's Liquidated Damages as liquidated damages for the failure of the close of escrow as provided herein pursuant to California Civil Code sections 1671 and 1677.

c.    No Limitation of Surviving Obligations.  Nothing contained in this Contract shall limit the rights of either Party against the other for obligations or indemnities which survive Closing or termination hereof.

Page 7

Signed by Judge James W. Meyers February 19,2009

d.     Execution of Termination Documents. Upon a termination of this Contract, each Party agrees to cooperate with the other Party and execute such documents as may be reasonably required to evidence such termination. This provision survives termination of this Contract.

20.     NO THIRD PARTY BENEFICIARIES; NO RECORDATION. This Contract is between Buyer and Seller and is not intended, nor shall it be construed, to be for the benefit of any third party. This Contract shall not be recorded.

21.     EXECUTION BY FAX. This Contract may be executed by the Parties by the exchange via facsimile of signature pages executed by the Parties, and this Contract shall be enforceable by the Parties upon the execution of this Contract by each of the Parties by the exchange of such signature pages via facsimile. Any Party executing this Contract via facsimile as provided herein shall also deliver to the other Party an executed original of this Contract within three business days of such fax delivery.

22.     BANKRUPTCY COURT APPROVAL. Notwithstanding anything contained herein to the contrary, this Contract and the obligations of Seller and Buyer to complete this transaction are expressly conditioned upon an order (the "Order") being entered by the Bankruptcy Court (a) approving the transaction upon the terms set forth in this Contract (pursuant to Sections 363 and 365(a) and (f) of the Bankruptcy Code); (b) finding that the Lease (i) has not been terminated, (ii) is in full force and effect, and (iii) is subject to assumption by Seller and assignment to Buyer pursuant to Section 365 of the Bankruptcy Code; and (c) approving the assignment of the Leasehold Estate and selling the Subject Property to Buyer free and clear of all monetary liens, claims and encumbrances; provided that such Order shall not have been stayed by a court of competent jurisdiction. If the Bankruptcy Court fails to approve this Contract as a result of receipt of a bid of higher value to Seller, then Seller shall reimburse the amount of the Deposit to Buyer, provided Buyer is not in default under this Contract.

23.     TIME IS OF THE ESSENCE. Time is of the essence of this Contract. If the final date of any period falls upon a Saturday, Sunday, or legal holiday, then in such event the expiration date of such period shall be extended to the next day which is not a Saturday, Sunday, or legal holiday.

24.     FORCE MAJEURE. Performance of an obligation under this Contract may be delayed if, despite the exercise of good faith and due diligence, it is prevented by a cause beyond the reasonable control of the party having the obligation. Cause for delay may include labor disputes, civil unrest, fire or casualty, governmental action or inaction, and other causes customarily called "force majeure". Financial inability will not be excused by this Section.

LA_DOCS\795888.3[W2000]

*Signed by Judge James W. Meyers February 19,2009*

IN WITNESS WHEREOF, this Contract has been executed as set forth below.

SELLER:

Paragon Steakhouse Restaurants, Inc.
a Delaware corporation

By: _Willence_
Name: _Joseph L. Willence_
Title: _VP & CFO_
Date: _11/19/08_
Taxpayer I.D. Number: _33-0369893_

Paragon of Michigan, Inc.
a Wisconsin corporation

By: _Willence_
Name: _Joseph L. Willence_
Title: _VP & CFO_
Date: _11/9/08_
Taxpayer I.D. Number: _39-12-4588_

BUYER:

CARVERS, SANDY CORP.
A UTAH CORPORATION

By: _M. LaSalle_
Name: _Joel M. LaSalle_
Title: _President_
Date: _11-19-08_
Taxpayer I.D. Number: _26-3621594_

LA_DOCS\795888.3[W2000]

# EXHIBIT B

**CSD 1001C** [11/15/04]
Name, Address, Telephone No. & I.D. No.
Julia W. Brand, Esq. (SBN 121760)
Enid M. Colson, Esq. (SBN 189912)
Liner Yankelevitz Sunshine & Regenstreif, LLP
1100 Glendon Ave., 14th Floor
Los Angeles, CA 90024-3503
(310) 500-3500

### UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
135 West "F" Street, San Diego, California 92101-6991

In re

STEAKHOUSE PARTNERS, INC., a Delaware corporation,

Debtor-in-Possession.

BANKRUPTCY NO.
08-04147-11 (Jointly Administered with Case Nos. 08-4152-11 & 08-4153-11)

Date of Hearing:      November 25, 2008
Time of Hearing:      2:00 p.m.
Name of Judge:      The Hon. James W. Meyers

___

**_SECOND_ AMENDED\* ORDER AUTHORIZING AND APPROVING THE SALE OF ASSETS OF THE BANKRUPTCY ESTATE RELATED TO THE DEBTORS' RESTAURANT LOCATED IN GLENDALE, ARIZONA FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND AUTHORIZING THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' UNEXPIRED LEASE FOR THE GLENDALE, ARIZONA RESTAURANT**

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through seven (7) with exhibits, if any, for a total of twenty-five (25) pages, is granted.  Motion Docket Entry No. 394.

//

//          *A copy of a redlined version of the **second** amended order ~~of the original entered order~~ is attached hereto as Exhibit "B"

//

//

//

DATED: _____          _____
                                                    Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011 that the relief in the order is granted by the court.

Submitted by:

Enid M. Colson, Esq. (SBN: 189912)
Attorney Name

By: _/s/ Enid M. Colson_
Attorney for ☐ Movant ☐ Respondent

*Signed by Judge James W. Meyers February 19,2009*

CSD 1001C [11/15/04] Page 4 of 7
Order on Motion re Sale of Assets (Glendale, AZ)
Debtor: *In re Steakhouse Partners, Inc.*                                        Case No. 08-04147-11

provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors'
bankruptcy estates.

4.    The Purchaser is deemed to have purchased the Glendale Assets, including the assignment of the
unexpired lease for the premises located at 8172 W. Bell Road, Glendale, Arizona 85308 (the "Glendale Lease"), in good
faith pursuant to Section 363(m) of the Bankruptcy Code so that the reversal or modification of the Sale Order does not
affect the validity of the transactions as to the Purchaser.

5.    All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the
assumption by the Debtors and assignment to Purchaser having been satisfied, subject to and conditioned upon the
consummation of the Sale on the Closing Date, the Debtors are hereby authorized (a) to assume and assign the unexpired
Glendale Lease to Purchaser in accordance with the terms of the Sale Agreement, (b) to take any and all actions necessary
to consummate and effectuate the assumption and assignment of the Glendale Lease, and (c) take any and all actions
necessary or appropriate in connection therewith, including, without limitation, executing any documents in connection with
the assumption and assignment of the Glendale Lease.

6.    The Debtors are authorized to satisfy all closing costs associated with the sale of the Glendale Assets from
the sale proceeds.

7.    Pursuant to Section 363(f) of the Bankruptcy Code, effective upon closing, the sale of the Glendale Assets
will vest in the Purchaser all right, title and interest of the Debtors and the bankruptcy estates in the Glendale Assets, free
and clear of all liens, claims or interests, including all security interests, liens, mortgages, encumbrances, title defects,
claims, liabilities, obligations, franchise or similar rights, and rights of first offer or first refusal or similar adverse interests of
any kind or character, ~~that are asserted by the persons who were served with notice of the Motion,~~ including, but not
limited to:  (a) the claims of creditors listed on the Debtors' bankruptcy schedules, (b) the claims by parties who have filed
claims or requests for special notice with the Court, and do not assert a lien or interest in the Glendale Assets, and  (c) the
liens, claims or interests asserted by the entities listed below (collectively, the "Affected Interests"):

(i)    The Class 4 Creditor Trust (first priority security interest in Debtors' assets);

*Signed by Judge James W. Meyers February 19,2009*

Document comparison by Workshare Professional on Thursday, February 19, 2009 4:42:10 PM

| Input: | |
|---|---|
| Document 1 ID | pcdocs://docs1/413481/3 |
| Description | #413481 v3 - Arrowhead Sale Order |
| Document 2 ID | pcdocs://docs1/413481/4 |
| Description | #413481 v4 - Arrowhead Sale Order |
| Rendering set | lysr |

| Legend: | |
|---|---|
| **<u>Insertion</u>** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| <u>Moved to</u> | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 2 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 4 |