1  Peter E. Garrell, Esq. (SBN: 155177)
        pgarrell@linerlaw.com
2  John M. Kennedy, Esq. (SBN: 156009)
        jkennedy@linerlaw.com
3  LINER GRODE STEIN YANKELEVITZ
   SUNSHINE REGENSTREIF & TAYLOR LLP
4  1100 Glendon Avenue, 14th Floor
   Los Angeles, California 90024-3503
5  Telephone:  (310) 500-3500
   Facsimile:  (310) 500-3501
6
   Attorneys for Debtors
7  Steakhouse Partners, Inc., Paragon Steakhouse Restaurants,
   Paragon of Michigan, Inc.
8                    UNITED STATES BANKRUPTCY COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  In re                                   )  Case No. 08-4147-JM7
                                            )
12  Steakhouse,                             )  Chapter 7
                                            )
13               Debtors.                   )  [Joint administered with Case Nos.: 08-
                                            )  04152-JM7 and 08-04153-JM7 and AP Case
14                                          )  No. 09-90163-JM]
                                            )
15                                          )  Honorable James W. Meyers
                                            )
16                                          )  FINAL FEE APPLICATION OF LINER
                                            )  GRODE STEIN YANKELEVITZ
17                                          )  SUNSHINE REGENSTREIF & TAYLOR
                                            )  LLP FOR ALLOWANCE OF FEES AND
18                                          )  REIMBURSEMENT OF EXPENSES;
                                            )  MEMORANDUM OF POINTS AND
19                                          )  AUTHORITIES
                                            )
20  _____   Date:          July 29, 2011
                                               Time:          10:00 a.m.
21                                             Department:   5 (Room 318)

22

23

24

25

26

27

28

                                                       Case No.  08-4147-JM
   _____
   FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
                   MEMORANDUM OF POINTS AND AUTHORITIES
   0078506/001/ 480714v03

# **TABLE OF CONTENTS**

**Page**

I. PROCEDURAL HISTORY AND STATUS OF CASE ........................................................ 1

    A.    Background of Case ........................................................................................ 1

    B.    Employment of the Liner Firm ...................................................................... 2

    C.    The Liner Firm's Background ........................................................................ 3

    D.    Fees Previously Requested and Awarded ...................................................... 4

    E.    No Agreement Regarding Compensation ...................................................... 4

    F.    Funds Available for Payment of the Liner Firm's Fees and Expenses ...................... 5

    G.    Request for Approval and Payment ................................................................ 5

II. THE SURCHARGE ACTION AND PROPOSED SETTLEMENT .................................... 6

III. SUMMARY OF SERVICES PERFORMED .................................................................... 7

    A.    AAR - Asset Analysis .................................................................................... 8

    B.    AD - Asset Disp ............................................................................................ 8

    C.    AR - Assumption/Rejection of Leases .......................................................... 9

    D.    BA - Business Analysis ................................................................................. 9

    E.    BO - Business Operations .............................................................................. 9

    F.    CA - Case Administration .............................................................................. 9

    G.    CAO - Claims Administration ....................................................................... 10

    H.    CC - Conference Calls .................................................................................. 10

    I.    Claims G - Claims General ........................................................................... 10

    J.    F - Financing ................................................................................................. 11

    K.    FEA - Fee/Employment Application ............................................................. 11

    L.    FEA2 - Preparing Final Fee Application ....................................................... 11

    M.    LitSur- Litigation Surcharge ........................................................................ 11

    N.    Lit-ANA - Litigation/Analysis/Strategy ...................................................... 12

    O.    Lit-CA - Litigation Civil Action ................................................................... 12

1

## **TABLE OF CONTENTS (cont.)**

2                                                                                                                  **Page**

3      P.      MOC - Meetings of Creditors........................................................................12

4      Q.      OCM - Other Contested Matters..............................................................12

5      R.      PDS - Plan and Disclosure Statement......................................................12

6      S.      RFS - Relief from Stay Proceedings.........................................................13

7      T.      TL - Travel/Lodging Expenses.................................................................13

8  IV. SUMMARY OF SERVICES AND RATES .............................................................13

9  V. SUMMARY OF EXPENSES INCURRED ...............................................................13

10  VI. EVALUATING STANDARDS ............................................................................14

11  VII. APPLICATION OF THE *JOHNSON* FACTORS TO THE PRESENT CASE ...................17

12  VIII. THE COURT SHOULD AWARD THE LINER FIRM ITS FEES AND
          COSTS.............................................................................................................19

13

14  IX. CONCLUSION ..................................................................................................21

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES

0078506/001/ 480714v03

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Johnson v. Georgia Highway Express, Inc.*
488 F.2d 714 (5th Cir. 1974) .................................................................15, 16

*In re Mednet*
251 B.R. 103 (9th Cir. BAP 2000) ..........................................................16

*In re Nucorp Energy, Inc.*
764 F.2d 655 (9th Cir. 1985) .................................................................5, 15

*In re Powerline Oil Co.*
71 B.R. 767 (B.A.P. 9th Cir. 1986) .........................................................15, 16

*In re THC Financial Corp.*
659 F.2d 951 (9th Cir. 1981), *cert. denied,* 456 U.S. 977 (1982).....................15

*In re Westec Corp.*
313 F.Supp. 1296 (S.D. Tex. 1970) .........................................................17

*In re Western Farmers Association*
7 B.C.D. 197 (Bankr. W.D. Wash. 1981) .................................................20

*In re Yermakov*
718 F.2d 1465 (9th Cir. 1983) ...............................................................15

## STATUTES

11 U.S.C. § 330........................................................................14, 15, 18, 19

11 USC § 331................................................................................16-17, 19-20

## MISCELLANEOUS

3 COLLIER ON BANKRUPTCY, ¶ 330.04[4][d] at 330-48 (Alan N. Resnick and Henry J.
Sommer eds., 15th ed. rev. 2002) .........................................................17

3 COLLIER ON BANKRUPTCY, ¶ 330.04[6][a] at 330-59 (Alan N. Resnick and Henry J.
Sommer eds., 15th ed. rev. 2002) .........................................................18

3 COLLIER ON BANKRUPTCY, ¶ 331.03 [3] at 331-13 (Alan N. Resnick and Henry J.
Sommer eds., 15th ed. rev. 2002) .........................................................19-20

1   **TO THE HONORABLE JAMES W. MEYERS, UNITED STATES BANKRUPTCY**

2   **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND OTHER PARTIES IN**

3   **INTEREST:**

4   Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, LLP (the "Liner Firm"),

5   counsel for Steakhouse Partners, Inc., Paragon Steakhouse Restaurants, Inc., and Paragon of

6   Michigan, Inc. (the "Debtors"), hereby moves ("Motion") the Court on March 18, 2011 at 10:00

7   am. in Courtroom 5 (Room 318) of the U.S. Bankruptcy Court located at 325 West First Street, San

8   Diego, CA 92101, pursuant to 11 U.S.C. § 330 for an order granting the Liner Firm's final

9   application (the "Application") for compensation for professional services rendered and

10  reimbursement of expenses incurred in connection with its representation of Debtors in this

11  Chapter 7 (former Chapter 11) case.

12  By this Application, the Liner Firm seeks allowance and payment of $570,186.50 in

13  attorney fees (after more than $100,000 in write-offs) and $52,615.51 in expenses incurred during

14  the period of May 15, 2008 through January 31, 2011, reduced by $100,108.63 for compensation

15  already provided for a total request of $522,692.38. The Liner Firm asks that, after payment of any

16  priority claims (*In re W. Rittenhouse* (1987) 76 B.R. 610 (S.D. Ohio, 1987)), payment of the fees

17  and costs be distributed to the Liner Firm from the Debtor's Bank Account currently holding

18  approximately $1,075,000.00, based upon the efforts the Liner Firm which materially and

19  substantively caused the foregoing amount to be realized and deposited in that account and but for

20  which those funds would not have been generated and deposited.

21  This Application is based upon the following Memorandum of Points and Authorities, the

22  Declaration of Peter E. Garrell ("Garrell Decl.") filed contemporaneously herewith, and the

23  pleadings and evidence on file with the Court in this case, and upon such other evidence as the

24  Court may allow. A Billing Statement showing the combined total of fees and expenses requested

25  (and all payments made to date) is attached as Exhibit "A" to the Garrell Declaration.

26  / / /

27  / / /

28  / / /

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES
0078506/001/ 480714v03

1    WHEREFORE, Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, LLP

2  respectfully requests that the court approve the amounts requested in this Application.

3    Respectfully submitted:

4

5  Dated: May 16, 2011                    LINER GRODE STEIN YANKELEVITZ
                                          SUNSHINE REGENSTREIF & TAYLOR  LLP
6

7                                         By:    /s/ John M. Kennedy _____
8                                                Peter E. Garrell
                                                 John M. Kennedy
9                                                Attorneys for Plaintiffs and Debtors in
                                                 Possession Steakhouse Partners, Inc.,
10                                               Paragon Steakhouse Restaurants, Paragon
                                                 of Michigan, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES
0078506/001/ 480714v03

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PROCEDURAL HISTORY AND STATUS OF CASE

**A.    Background of Case**

These bankruptcy cases originated as chapter 11 cases. Steakhouse Partners, Inc., Paragon Steakhouse Restaurants, Inc., and Paragon of Michigan, Inc. (the "Debtors") filed chapter 11 petitions on May 15, 2008.

Since the filing of these bankruptcy cases on May 15, 2008, the Debtors have operated 21 of their restaurants, twelve of which were sold with the approval of this Court and nine have been closed. To date, the Court entered orders approving the sales of the Debtors' restaurants located in Taylor (MI), Troy (MI), Auburn Hills (MI), Bakersfield, Folsom, Glendale (AZ), Lafayette (IN), Oceanside, Roseville, San Diego, Sandy (UT), South Bend (IN), South San Francisco and Temecula. The Debtors also sold the personal property and liquor licenses associated with its Modesto and Centerville (OH) restaurants, as well as other liquor licenses.

As a result of these sales, the Debtors received approximately $2.67 million in gross cash sale proceeds and a number of Promissory Notes. After payment of costs of sale and certain disbursements therefrom as approved by the Court, the Debtors are holding approximately $1,075,000 in remaining sale proceeds in a segregated debtor-in-possession account.

The Debtors used their diminishing cash to operate the Restaurants for the purpose of selling them as going concerns. Because the cash generated from operations was not encumbered by a lien in favor of the Creditor Trust, the Debtors could have used this cash to satisfy claims, including those of its counsel. Indeed, the Debtors specifically spent that money to maximize value and, after an initial payment to counsel, also requested that its counsel defer applying for further interim fee awards in order to allow the Debtors to maximize its operation and apply all funds towards generating the greatest values possible. Counsel agreed, now finding itself in the present position. Had counsel applied for its interim fees (to which it was entitled by express order of the Court (Exhibit E to Garrell Decl.)), the Debtor's estate would not have been able to generate the sales values achieved.

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES

0078506/001/ 480714v03

1   In particular, had the Debtors not worked to sell the Restaurants as going concerns to

2   achieve the highest price possible, they would have made different decisions regarding the

3   operation and closure of particular Restaurants.  Instead, the Debtors spent their operating cash

4   flow (approximately $13 million) and incurred additional administrative expenses to continue to

5   operate the restaurants while they were aggressively marketing them in order to maximize their

6   value in the hope of selling the entire company (and then the individual restaurants) as going

7   concerns.  Sale of the Restaurants as going concerns was the only viable option for satisfying the

8   Creditor Trust's secured claim.

9   The docket is attached as Exhibit "D" to the Garrell Declaration, which shows the extensive

10   motion practice undertaken by the Liner Firm on behalf of the Debtors to undertake the foregoing

11   representation.

12   **B.   Employment of the Liner Firm**

13   Before the filing of the petitions, the Debtors retained the Liner Firm as bankruptcy counsel.

14   The Liner Firm then filed the petitions on May 15, 2008.  On May 30, 2008, the Debtors filed a

15   "Disclosure of Compensation of Attorney for Debtors," showing that the Debtors provided the

16   Liner Firm with a $100,000.00 retainer.  Garrell Decl., Ex. B.

17   On June 6, 2008, the Debtors filed an application to employ Liner Grode Stein Yankelevitz

18   Sunshine Regenstreif & Taylor LLP (formerly Liner Yankelevitz Sunshine & Regenstreif LLP

19   ("the Liner Firm") as bankruptcy counsel.  Garrell Decl., Ex. C.  By order entered June 6, 2008,

20   this Court approved the Liner firm's employment as bankruptcy counsel effective as of May 15,

21   2008.  Garrell Decl., Ex. D.

22   The terms of the Liner Firm's employment, approved by this Court, were as follows:  The

23   Debtors jointly paid to the Liner Firm $100,000.00 as a pre-petition retainer.  Garrell Decl., Exs. B

24   & C.  The filing fees were included in the pre-petition retainer.  By the time of the filing of the

25   Chapter 11 cases, the Liner Firm had incurred the sum of $42,013.00 for pre-petition services.

26   After payment of the filing fees, the balance of funds in the amount of $54,870.00 (the "Retainer")

27   were deposited into a segregated account to be applied against fees and costs expended in

28

1  connection with the Firm's proposed employment as Debtors' counsel. *Ibid*.  The rates of the Liner

2  Firm attorneys are set forth on pages 124-125 of Exhibit A to the Garrell Declaration.

3      On July 17, 2008, the Court granted the Liner Firm's motion for an order establishing

4  interim compensation procedure, permitted the Liner Firm to file monthly fee statements with a ten

5  (10) day objection period.  Garrell Decl., Ex. E.  On August 4, 2008, the Liner Firm filed its first

6  (and only) monthly fee statement in the amount of $66,730.19.  Garrell Decl., Ex. F.  That

7  statement noted that the amount of $54,870.00 constituted the balance of funds remaining from the

8  initial $100,000.00 deposit.  Having received no objections to this monthly statement, the Liner

9  Firm, as authorized by the order establishing the interim compensation procedure, eventually

10  applied the $54,870.00 sum (with accrued interest) to the outstanding balance due and owing.

11  Garrell Decl., Ex. A.  Finally, on December 19, 2008, this Court approved the payment of

12  $50,000.00 to the Liner Firm, a portion of which ($5,000.00) went to retain (on behalf of the

13  Debtors) a company called Revitalization Partners, which was retained to assist the Debtors with

14  reorganization.  Garrell Decl., Exs. A & G.

15      Thus, for its post-petition efforts, the Liner Firm as received $55,058.92 (retainer plus

16  interest) plus $45,000 (December 19, 2008 payment ) plus $49.71 (interest) for a total of

17  $100,108.63.  Thus, the sum of the post-petition payments to the Liner Firm, the $100,108.63

18  amount is dwarfed by the outstanding balance of fees and costs in the amount of $522,692.38, after

19  unilateral write-offs.  Garrell Decl., Ex. A.

20      **C.    The Liner Firm's Background**

21      A copy of the biographies of Liner Firm attorneys and professionals working on this matter

22  are attached as part of Exhibit C to the Garrell Decl., [Julia Brand, Enid M. Colson, Charles Liu,

23  Felice Harrison], with the biographies of additional attorneys who worked on this matter after the

24  filing of the petitions set forth in Exhibit I to the Garrell Declaration [Peter E. Garrell, John M.

25  Kennedy, J. Rudy Freeman].  The biographies describe the education, qualification and experience

26  of professionals and paraprofessionals employed by the Liner Firm who have performed services in

27  this case.

28

1     Since the May 15, 2008 petition date, the Liner Firm has provided substantial assistance to

2    the Debtors.  These services were focused on the sale of the Debtors' Restaurants as going

3    concerns and included, but were not limited to, negotiation and documentation of the sale of the

4    restaurants, motion for approval of a sale and bidding procedure for the sale of the assets and

5    negotiations with the creditor representatives related thereto, motions for approval of the sale of the

6    Debtors' Restaurants and related assets, addressing issues with landlords regarding payment of cure

7    costs and rent, addressing issues of creditors that affected the ability of the Debtors to continue to

8    operate their restaurants as going concerns, including PACA creditors, addressing issues raised by

9    the U.S. Trustee, addressing issues related to the sale of the Debtors' liquor licenses and issues

10    related to the closure of restaurants.  These actions also included frequent communication with

11    creditors' representatives regarding the sales process, restaurant sales and business operations.

12    All of the services rendered by the Liner Firm were reasonable and necessary to preserve

13    the assets of the Debtors' estates and to the sale of the assets of the estates and provided a direct

14    benefit to the Creditor Trust.

15    **D.**    **Fees Previously Requested and Awarded**

16    This is the Liner Firm's final fee application.  But for the initial retainer amount and the

17    $50,000.00 payment in December 2008, during the pendency of the action the Debtors requested

18    that the Liner firm refrain from filing additional monthly interim fee applications so that they might

19    retain those monies with the company for ongoing operations.  The Debtors believed that

20    maintaining the company as a whole would make it more attractive to potential buyers.  To their

21    detriment, the Liner Firm acquiesced to this request.  Had the Liner Firm not chosen to assist the

22    Debtors (thus benefiting the secured creditor by maximizing value), the Liner Firm would have

23    filed regular monthly fee applications (as authorized by court order) and likely have little to no

24    outstanding accounts receivable.

25    **E.**    **No Agreement Regarding Compensation**

26    No understanding exists for sharing compensation received or to be received by the Liner

27    Firm for services rendered in this case, except that compensation received shall be shared among

28    the members and associates of the Liner Firm and to pay the Firm's overhead.  Other than the

1  Retainer and $50,000 amounts previously awarded by this Court, the Liner Firm has not received

2  or been promised any other payments for the services rendered or to be rendered in any capacity

3  whatsoever in connection with the case.

4      **F.      Funds Available for Payment of the Liner Firm's Fees and Expenses**

5          The Liner Firm is informed and believes that as of the date of this Application, the funds on

6  hand in the Debtor's estate currently exceed the amounts requested by the Liner Firm.

7      **G.      Request for Approval and Payment**

8          With this final fee application, the Liner firm has devoted 1,659.71 hours of attorney time

9  for total fees of $679,096.25.  Garrell Decl., Ex. A.  However, in an exercise of billing judgment, in

10 order to avoid for charging for any time that did not have a direct impact on the estate and to

11 dispense with potential objections to this fee application, the Liner Firm will write off fees in the

12 amount of $108,909.75, consisting of time billed in the following categories as shown on the

13 Billing Statement (Garrell Decl., Ex. A):  (1) FEA2 [Preparing Final Fee Application] $5,538.00;[1]

14 (2) Lit-Sur [Litigation Surcharge] $91,594.00; (3) Lit-Ana [Litigation/Analysis/Strategy]

15 $6,548.75; (4) Lit-CA [Litigation Civil Action] $4,274.50; (5) OCM [Other Contested Matters]

16 $830.00; and (6) PDS [Plan and Disposition Statement] $124.50.

17         The foregoing amounts were incurred largely in relation to a surcharge action on behalf of

18 the Debtors and negotiation of a settlement agreement of the surcharge action.  Therefore, the Liner

19 Firm's total fee request amounts to $570,186.50.  The Liner Firm also requests allowance and

20 payment of $52,615.51 for expenses incurred during the pendency of the matter and the Liner

21 firm's representation therein.  Garrell Decl., Ex. A.  Those total fees and costs, after write-offs,

22 amounts to $622,801.01.  Subtracting the amounts paid to the firm ($100,108.63) from the

23 $622,801.01 amount, the Liner Firm is seeking a total fee award of $522,692.38.

24         A full description of the services provided, containing a listing of the attorneys and

25 paraprofessionals who devoted time to each matter during the Application Period, along with their

26

27 [1] Despite the case law holding that the Liner Firm is entitled to fees related to preparing a fee
   application (*In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir., 1985), the Liner Firm is foregoing
28 these fees in an effort to expedite the application process and reduce any objections.

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES
0078506/001/ 480714v03

1  billing rates, total hours and total fees billed, is attached as Exhibit "A" to the Garrell Declaration.

2  This exhibit shows the date the services were rendered, the nature of the services rendered, who

3  rendered the services, the time required for the performance of such services, and the fee associated

4  with each service rendered.  All services performed by the Liner firm's professionals were recorded

5  in time increments of one-tenth (.10) of an hour.  All services performed by the Liner firm's

6  paralegals, legal assistants and professional staff were professional in nature and, if not performed

7  by the paraprofessionals, would have been performed by attorneys.

8         Summaries of the expenses, which include all out-of-pocket expenses incurred by the Liner

9  firm for all matters on behalf of the Debtors during the Application Period, are also contained in

10  Exhibit "A."  Expenses for court costs, outside copy costs, computerized legal research, long

11  distance telephone use, express delivery, travel, and courier services are billed at actual cost.  In-

12  house copy charges are billed at $.18 per page.  The Liner firm does not charge for incoming faxes.

13  Courier and overnight services were necessary when regular mail would not be adequate to

14  complete the task in a timely manner.

15         **II. THE SURCHARGE ACTION AND PROPOSED SETTLEMENT**

16         On April 14, 2009, the Debtors initiated an adversary proceeding to surcharge the collateral

17  of defendant T. Scott Avila, as Creditor Trustee of the Class IV Creditor Trust and the Class IV

18  Creditor Trust (collectively, the "Creditor Trust") pursuant to the provisions of section 506(c) of

19  Title 11 of the United States Code (the "Bankruptcy Code"), for the expenses associated with the

20  sale of the secured creditor's collateral.  These expenses included but are not limited to, the

21  expenses incurred by the Debtors to operate their restaurants as going concerns to maximize the

22  value of the collateral and services rendered by various estate professionals (including the Liner

23  Firm) to preserve and sell the Debtors' restaurants and other assets to various third parties.  As

24  noted, but for the expenditure of estate funds to operate the restaurants and the services of the

25  Estate Professionals during these bankruptcy cases, the Debtors' restaurants would have ceased

26  operations and the Creditor Trust's collateral would have been sold for very little value in a piece-

27  meal liquidation.

28

0078506/001/ 480714v03

1      After protracted good faith and arms length negotiations, Debtors, the Creditor Trust, and

2  counsel for the Committee of unsecured creditors reached a good faith mutual resolution as to the

3  surcharge litigation.  There, the Debtors (and the Liner Firm) agreed to compromise their claims in

4  order to resolve remaining issues and allow this bankruptcy proceeding to come to a conclusion.  In

5  salient part, the proposed settlement provided that the Debtors would be entitled to the receipt of

6  cash from the Debtors' remaining assets in the Trust Account and the assignment of promissory

7  notes.  The settlement agreement was simply a negotiated sum not based upon the value of the

8  services provided by the Liner Firm to the Debtors' estate.

9      As the Court well knows, following the filing of objections to the proposed settlement

10  agreement, the Court on its own motion converted the action from Chapter 11 to Chapter 7.

11  ### III.  SUMMARY OF SERVICES PERFORMED

12      A copy of the Liner Firm's billing statement for the period covered by this Application is

13  attached as Exhibit "A" to the supporting Garrell Declaration.  The billing statements set forth in

14  detail the time spent and the specific professional services rendered by the Liner Firm.

15      For the Court's convenience, set forth below is a brief narrative history of the services

16  rendered by the Liner Firm for the period covered by this Application.  The Liner Firm has

17  arranged its billing charges in the following billing categories which, pursuant to Local Bankruptcy

18  Rules 2016-2 and 2016-3, substantially conform to Local Form CSD 1143:

| CATEGORIES (Service and Code) | | Hours Billed | Fees Requested |
|---|---|---|---|
| AAR | Asset Analysis | 11.10 hours | $4,592.50 |
| AD | Asset Disp | 697.80 hours | $298,064.00 |
| AR | Assumption/Rejection of Leases | 21.50 hours | $8,698.50 |
| BA | Business Analysis | 3.00 hours | $1,425.00 |
| BO | Business Operations | 40.30 hours | $12,684.50 |
| CA | Case Administration | 301.30 hours | $117,987.50 |
| CAO | Claims Administration | 169.00 hours | $75,463.00 |
| CC | Conference Calls | 11.30 hours | $4,237.50 |

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES

0078506/001/ 480714v03

| CLAIMS-G | Claims - General | 7.70 hours | $2,887.50 |
|---|---|---|---|
| F | Financing | 43.20 hours | $18,988.00 |
| FEA | Fee/Employment Application | 43.00 hours | $14,671.00 |
| FEA2 | Preparing Final Fee Application | 28.40 hours | $5,538.00 |
| Lit-Sur | Litigation Surcharge | 222.80 hours | $91,594.00 |
| Lit-ANA | Lit./Analysis/Strategy | 16.21 hours | $6,548.75 |
| Lit-CA | Litigation Civil Action | 10.30 hours | $4,274.50 |
| MCO | Meetings of Creditors | 7.0 hours | $2,625.00 |
| OCM | Other Contested Matters | 2.0 hours | $830.00 |
| PDS | Plan and Dis. Stmt | .30 hours | $124.50 |
| RFS | Relief from Stay Proceedings | 21.40 hours | $6,865.00 |
| TL | Travel/Lodging Expenses | 2.10 hours | $997.50 |
| **TOTAL** | | **1,659.71** | **$679,096.25** |

Set forth below is a narrative explanation, broken down by category, of the services performed by the Liner firm during the Application Period. No narrative is provided for those matters where no fees were incurred during the Application Period.

### A.    AAR - Asset Analysis

**Hours Expended:**    **11.10 hours**

**Fees Requested:**    **$4,592.50**

Services rendered under this category relate to time incurred mainly in connection with determining the Debtors' assets, recovery of the assets and recovery of funds under certain promissory notes.

### B.    AD - Asset Disp

**Hours Expended:**    **697.80 hours**

**Fees Requested:**    **$298,064.00**

Services rendered under this category relate to time incurred mainly in connection with the transfer, sale and disposition of assets such as leases, liquor licenses and entire restaurant

1  operations.  This work also included identifying interested third parties, engaging in the bid

2  process, determine sales and closing costs, and drafting motions for court approval for the

3  disposition of assets.

4       **C.**     **AR - Assumption/Rejection of Leases**

5            **Hours Expended:**    **21.50 hours**

6            **Fees Requested:**    **$8,698.50**

7       Services rendered under this category relate to time incurred mainly in connection

8  with reviewing lease arrangements, determining which leases should be rejected or abandoned,

9  drafting motions for court approval, and corresponding with the various landlords.

10       **D.**     **BA - Business Analysis**

11            **Hours Expended:**    **3.0 hours**

12            **Fees Requested:**    **$1,425.00**

13       Services rendered under this category relate to time incurred mainly in connection

14  with communicating with the creditor trust, determining the value of and resolving PACA claims,

15  and researching and advising the client with respect to insurance matters.

16       **E.**     **BO - Business Operations**

17            **Hours Expended:**    **40.30 hours**

18            **Fees Requested:**    **$12,684.50**

19       Services rendered under this category relate to time incurred mainly in connection

20  with operating the Debtor's restaurants, corresponding with financial institutions and utility

21  companies, negotiating and resolving claims for security deposits, and reviewing and finalizing

22  PACA claims.

23       **F.**     **CA - Case Administration**

24            **Hours Expended:**    **301.30 hours**

25            **Fees Requested:**    **$117,987.50**

26       Services rendered under this category relate to time incurred mainly in connection

27  with operating the Debtor's restaurants, reviewing and analyzing cash collateral matters, drafting

28  and filing "first day" motions; reviewing and revising schedules and filing motions related to

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES
0078506/001/ 480714v03

1    schedules, communicating with the secured and unsecured creditors; preparing for and attending

2    section 341a meeting of creditors, preparing and filing motions to defer administrative rent,

3    preparing and filing monthly operating reports, reviewing and revising memoranda regarding the

4    sale of liquor licenses, drafting and revising motions to sell FF&E (furniture, fixtures, and

5    equipment).

6         **G.    CAO - Claims Administration**

7              **Hours Expended:      169.0 hours**

8              **Fees Requested:     $75,463.00**

9              Services rendered under this category relate to time incurred mainly in connection

10   with analyzing PACA claims, filings motions related to PACA claims, reviewing proof of claims,

11   researching judgment liens, interacting and communicating with produce suppliers, interacting and

12   communicating with landlords, analyzing administrative claims and landlord's motions for priority,

13   coordinating and resolving insurance claims and disputes, and negotiating with all parties regarding

14   global settlement, and filing motions and complaints in surcharge action.

15        **H.    CC - Conference Calls**

16             **Hours Expended:      11.30 hours**

17             **Fees Requested:     $4,237.50**

18             Services rendered under this category relate to time incurred mainly in connection

19   with conference calls with all parties, Debtors' representatives, as well as secured and unsecured

20   creditors regarding motions for approval of sale of assets, rejection of leases, potential D&O

21   complaint, review of accumulation of remaining funds, payment of outstanding tax liens, and IRS

22   claims.

23        **I.    Claims G - Claims General**

24             **Hours Expended:      7.70 hours**

25             **Fees Requested:     $2,887.50**

26             Services rendered under this category relate to time incurred mainly in connection

27   with seeking to enlarge time to file preference actions, payment of gift card amounts, IRA claims

28   and payment of payroll taxes.

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES

0078506/001/ 480714v03

**J.**  **F - Financing**

Hours Expended:    **43.20 hours**

Fees Requested:    **$18,988.00**

Services rendered under this category relate to time incurred mainly in connection with insurance matters and premium financing, and cash collateral and surcharge issues to pay ongoing expenses of Debtors.

**K.**  **FEA - Fee/Employment Application**

Hours Expended:    **43.0 hours**

Fees Requested:    **$14,671.00**

Services rendered under this category relate to time incurred mainly in connection with initial application for employment as counsel for debtor, addressing issues in insider compensation, reviewing and revising section 2016 declarations for the Debtors; retaining and filing motion to retain Revitalization Partners, and reviewing application for unsecured creditors to retain Baker and McKenzie.

**L.**  **FEA2 - Preparing Final Fee Application**

Hours Expended:    **28.40 hours**

Fees Requested:    **$5,538.00**

Services rendered under this category related to drafting this Application, Memorandum of Points and Authorities, and corresponding Declaration of Peter E. Garrell. Additionally, services included reviewing the file and the bill to ensure accuracy with respect to billing entries.

**M.**  **LitSur- Litigation Surcharge**

Hours Expended:    **222.80 hours**

Fees Requested:    **$91,594.00**

Services rendered under this category relate to time incurred mainly in connection with drafting surcharge complaint, opposing motion to dismiss, drafting and reviewing and revising settlement of surcharge complaint, and negotiating settlement with all parties.

1    **N.    Lit-ANA - Litigation/Analysis/Strategy**

2        **Hours Expended:    16.21 hours**

3        **Fees Requested:    $6,548.75**

4        Services rendered under this category relate to time incurred mainly in connection

5    with researching and advising the debtors regarding surcharge action, litigation with creditor trust

6    and unsecured creditor committee, and conducting legal research to enlarge time to file preference

7    actions.

8    **O.    Lit-CA - Litigation Civil Action**

9        **Hours Expended:    10.30 hours**

10        **Fees Requested:    $4,274.50**

11        Services rendered under this category relate to time incurred mainly in connection

12    with drafting, reviewing and revising complaint in surcharge action, and conducting legal research.

13    **P.    MOC - Meetings of Creditors**

14        **Hours Expended:    7.0 hours**

15        **Fees Requested:    $2,625.00**

16        Services rendered under this category relate to time incurred mainly in connection

17    with traveling to San Diego for meeting of creditors pursuant to section 341a.

18    **Q.    OCM - Other Contested Matters**

19        **Hours Expended:    2.00 hours**

20        **Fees Requested:    $830.00**

21        Services rendered under this category relate to time incurred mainly in connection

22    with responding to matters in state court litigation, reviewing local rules regarding service of

23    summons and complaint, and responding to stipulation to extend time for creditor's trust to respond

24    to surcharge complaint.

25    **R.    PDS - Plan and Disclosure Statement**

26        **Hours Expended:    .30 hours**

27        **Fees Requested:    $124.50**

28        Services rendered under this category relate to time incurred mainly in connection

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES
0078506/001/ 480714v03

1  with analyzing and devising strategy for liquidation of surcharge complaint and classification of

2  claims.

3    **S.    RFS - Relief from Stay Proceedings**

4        **Hours Expended:    21.40 hours**

5        **Fees Requested:    $6,865.00**

6        Services rendered under this category relate to time incurred mainly in connection

7  with researching and revising various requests from third parties for relief from stay, including

8  landlords and Blue Shield, reviewing and revising motion for cash collateral proceedings.

9    **T.    TL - Travel/Lodging Expenses**

10        **Hours Expended:    2.10 hours**

11        **Fees Requested:    $997.50**

12        Services rendered under this category relate to time incurred mainly in connection

13  traveling to and appearing for hearings and section 341a meeting of creditors.

14            **IV.  SUMMARY OF SERVICES AND RATES**

15      Below are services rendered under a breakdown by attorney and/or paraprofessional:

| Name | Number of Hours | Hourly Rate | Total |
|------|-----------------|-------------|-------|
| Julia W. Brand | 788.40 hours | $ 475.00 / hour | $ 374,490.00 |
| Cynthia Cervini | 28.4 hours | $ 195.00 / hour | $ 5,538.00 |
| Enid M. Colson | 339.00 hours | $ 415.00 / hour | $ 140,685.00 |
| Peter E. Garrell | 70.90 hours | $ 475.00 / hour | $ 33,677.50 |
| Felice Harrison | 215.70 hours | $ 215.00 / hour | $ 46,375.50 |
| John M. Kennedy | 195.51 hours | $ 375.00 / hour | $ 73,316.25 |
| Loren A. Riehl | 21.80 hours | $ 230.00 / hour | $ 5,014.00 |
| **TOTAL HOURS:** | **1659.71** | **TOTAL:** | **$ 679,096.25** |

26            **V.  SUMMARY OF EXPENSES INCURRED**

27      As with the Liner Firm's other clients, the Liner Firm incurred expenses in the course of

28  rendering services to the Debtors.  The total expenses incurred by the Liner Firm during the period

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES
0078506/001/ 480714v03

1  covered by this Application are itemized below.  This information also appears on the Liner Firm's

2  billing statements in detail and is attached as Exhibit "A" to the Garrell Declaration.  Total

3  expenses are also listed on the Summary Sheet attached as Exhibit "A" to the Garrell Declaration

4  and are broken down as follows:

| Service | Expense |
|---|---|
| Photocopying ("PC") | $30,187.26 |
| Postage ("POST") | $3,695.91 |
| Conference Calls ("CC") | $4,704.43 |
| Costs | $169.00 |
| Faxes ("FAX") | $82.20 |
| Messenger Services ("MESS") | $5,195.28 |
| Mileage ("MILE") | $425.72 |
| Westlaw Online Research ("MOLR") | $5,764.41 |
| Outside Photocopying ("OP") | $200.35 |
| Pacer Docket Retrieval ("PACER") | $1,480.80 |
| Parking ("PARK") | $115.75 |
| Transportation ("TRAN") | $182.00 |
| Word Processing ("WP") | $412.40 |
| **TOTAL** | **$52,615.51** |

21      The costs for Postage ("POST"), Conference Calls ("CC"), Messenger Services ("MESS"),

22  Mileage ("MILE"), Westlaw Online Research ("MOLR"), Outside Photocopying ("OP"), Pacer

23  Docket Retrieval ("PACER"), Parking ("PARK"), Transportation ("TRAN"), and Word Processing

24  ("WP") are "passed through costs."  This means that the Liner Firm did not add any sort of

25  surcharge and paid these costs out of pocket.  The copy costs are at $.18 per page.

26              VI.  **EVALUATING STANDARDS**

27      Section 330 of the Bankruptcy Code authorizes compensation for professionals rendering

28  services in connection with a bankruptcy case.  The responsibility for determining reasonable

1  compensation under section 330 of the Bankruptcy Code for services rendered to the estate rests

2  with the bankruptcy court, and the court's decision is final unless there is an abuse of discretion. *In*

3  *re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985). Sections 330(a)(1) to (3) of the

4  Bankruptcy Code require that the compensation awarded be "for actual, necessary services"..."the

5  court shall consider the nature, the extent, and the value of such services"..."the time spent on such

6  services"..."and whether the compensation is reasonable based on the customary compensation

7  charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy

8  Code]."

9       Prior to the enactment of the Bankruptcy Code, the Ninth Circuit followed the judicially

10  created "strict rule of economy" doctrine. *See In re THC Financial Corp.*, 659 F.2d 951, 955 n.2

11  (9th Cir. 1981), *cert. denied,* 456 U.S. 977 (1982). Section 330 of the Bankruptcy Code was

12  enacted to overrule this doctrine, and to ensure adequate compensation for bankruptcy attorneys so

13  that qualified specialists would not be forced to abandon the practice of bankruptcy law in favor of

14  more remunerative areas. *Nucorp Energy,* 764 F.2d at 658; *In re Powerline Oil Co.,* 71 B.R. 767,

15  770 (9th Cir. B.A.P. 1986).

16       In *In re Yermakov,* 718 F.2d 1465 (9th Cir. 1983), the Ninth Circuit discussed the test to be

17  used to calculate a reasonable attorney fee beyond the factors listed in section 330 of the

18  Bankruptcy Code. The Court stated that "[t]he primary method used to determine a reasonable

19  attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate."

20  *Id.* at 1471. This method has been referred to as the "lodestar" or basic fee test, which, if

21  warranted, can be adjusted upward or downward. In that regard, the Ninth Circuit in *Yermakov*

22  made specific reference to *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th

23  Cir. 1974), where the Fifth Circuit listed twelve factors that should be considered in awarding

24  attorneys' fees. These so-called "*Johnson* factors" have been referred to and utilized by many

25  courts throughout the country in considering and awarding fees in bankruptcy cases. *See, e.g.*

26  *Powerline Oil*, 71 B.R. at 771, and cases cited therein. These factors are as follows:

27       1.    The time and labor required;

28       2.    The novelty and difficulty of the questions involved;

15                                            Case No. 08-4147-JM

1    3.    The skill required to perform the legal services properly;

2    4.    The preclusion of other employment by the attorney due to acceptance of the case;

3    5.    The customary fee;

4    6.    Whether the fee is fixed or contingent;

5    7.    Time limitations imposed by the client or circumstances;

6    8.    The amount involved and the results obtained;

7    9.    The experience, reputation and the ability of the attorneys;

8    10.    The desirability of the case;

9    11.    The nature and length of the professional relationship with the client; and

10    12.    Awards in similar cases.

11    *Johnson,* 488 F.2d at 717-719.

12    In a decision by the Ninth Circuit Bankruptcy Appellate Panel, the Panel concluded that the

13    "lodestar" approach coupled with consideration of the "*Johnson* factors" is the appropriate standard

14    to be applied in awarding fees in a bankruptcy case. *Powerline Oil Co.*, 71 B.R. at 771; *see also In*

15    *re Mednet,* 251 B.R. 103, 108 (9th Cir. BAP 2000).

16    In this application, the Liner Firm is not seeking any upward adjustment of the "lodestar"

17    approach to its fee request. The requested fees are the product of the number of hours expended by

18    attorneys in representing the interests of the Debtors multiplied by their respective hourly rates. In

19    addition, the Liner Firm has not charged for secretarial overtime, although the firm bills its non-

20    bankruptcy clients for such items.

21    Section 331 of the Bankruptcy Code authorizes interim allowance of compensation and

22    reimbursement of expenses as follows:

23    A trustee, an examiner, a debtor's attorney, or any professional person

24    employed under section 327 or 1103 of this title may apply to the court not more

25    than once every 120 days after an order for relief in a case under this title, or more

26    often if the court permits, for such compensation for services rendered before the

27    date of such an application or reimbursement for expenses incurred before such date

28

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES

0078506/001/ 480714v03

1     as is provided under section 330 of this title.  After notice and hearing, the court

2     may allow and disburse to such applicant such compensation for reimbursement.

3     11 USC Sec. 331

4     Further, the Liner Firm's services rendered to and expense incurred for the Debtors during

5   the time period covered by this Application were actual and necessary and compensation therefore

6   is reasonable based upon the time, nature, extent and value of the services.  Accordingly, the Liner

7   Firm's fees and expenses should be allowed and paid in full.

8     **VII.  APPLICATION OF THE *JOHNSON* FACTORS TO THE PRESENT CASE**

9     The Liner Firm's time records, copies of which are attached hereto as Exhibit A and

10   incorporated herein by reference, demonstrate that during the Application Period the Liner Firm

11   spent a total of 1659.71 hours in representing the Debtors.  The Liner Firm submits that a review of

12   its time records will disclose that all of the time spent was reasonable and necessary for the

13   adequate representation of the Debtors in connection with the matters for which the Liner Firm was

14   employed.

15     Undoubtedly, what is more important than the quantity of time spent is the quality of

16   services provided.  Indeed, many courts, recognize that a strict adherence to time alone, without

17   consideration of other factors, would not be fair.  *See e.g., In re Westec Corp.,* 313 F.Supp. 1296

18   (S.D. Tex. 1970).  As stated in *Collier on Bankruptcy:*

19         [a]lthough the number of hours fairly and properly devoted to a case may aid

20         the court in arriving at a reasonable compensation, it should not serve as one of the

21         predominant considerations.  Undue emphasis on the factor of the 'time spent' fails

22         to acknowledge the fact that skill and experience may accomplish much in a short

23         period of time... Focus on the hours expended by a professional also may ignore the

24         fact that some services are routine and ordinary while other involve complex and

25         difficult issues.

26     3 COLLIER ON BANKRUPTCY, ¶ 330.04[4][d] at 330-48 - 330-49 (Alan N. Resnick and Henry

27   J. Sommer eds., 15th ed. rev. 2002).

28

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES

0078506/001/ 480714v03

1   Throughout the Application Period, there were multiple critical aspects of the case that

2   required significant attention, including attention to the Debtors' operations and increasing the

3   value of assets, extensive motion practice and briefing, unexpected motion practice and other

4   activities involved in seeking and negotiating with the Debtors, and potential buyers of leases,

5   restaurants and liquor licenses.

6   Section 330 of the Bankruptcy Code requires that the bankruptcy court award fees in

7   bankruptcy cases based upon the cost of similar services rendered in non-bankruptcy cases.  This

8   requirement is a departure from prior law governing the allowance of compensation.  The drafters

9   of the Bankruptcy Code abandoned the notions of conservation of the estate and economy of

10  administration, which were pivotal concepts in assessing compensation under the prior Bankruptcy

11  Act.  Rather, Congress attempted to attract bankruptcy law specialists to make the adjudication of

12  bankruptcy cases more efficient.  As noted in *Collier on Bankruptcy:*

13      the change was based on the fundamental economic principle that the

14      payment of arbitrarily lower rates to lawyers in bankruptcy proceedings compared to

15      market-established rates for non-bankruptcy legal service would cause attorneys to

16      leave bankruptcy practice or to refrain from entering bankruptcy practice.  An

17      inherent risk in this system, as recognized by Congress, is that creditors would have

18      to absorb the cost of improper and inefficient administration.

19  3 COLLIER ON BANKRUPTCY, ¶ 330.04[6][a] at 330-59.

20  The Liner Firm's recap of services rendered, Exhibit A to the Garrell Declaration, depicts

21  the hourly rates charged by the attorneys in the firm as well as the actual total time spent by each

22  attorney and paralegal for services provided in this case.  These rates are comparable to the rates

23  the Liner Firm charges its non-bankruptcy clients.

24  The qualifications of the attorneys performing the services on behalf of the Debtors are set

25  forth in Exhibits B and E to the Garrell Declaration.  The Liner firm believes that each of the

26  persons listed on Exhibits B and E are highly qualified to perform the services rendered on the

27  Debtors' behalf and have billing rates commensurate with similarly qualified attorneys.  The Liner

28

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES
0078506/001/ 480714v03

1  Firm submits that it has a well-earned reputation for providing quality legal services at reasonable

2  rates.

3       In its application to retain the Liner Firm, the Debtors sought and the Court approved

4  compensation for the Liner firm as an administrative expense on an hourly basis, plus

5  reimbursement of actual, necessary expenses actually incurred by the Liner firm.  In one sense,

6  however, representation of statutory parties in every bankruptcy case is contingent.  The contingent

7  nature depends on the availability of estate assets to satisfy administrative claims.  In this case, the

8  Debtors did not have sufficient liquid assets at the time of the Liner Firm's retention to pay

9  administrative claims, and so the degree of risk to the professionals involved is significant.

10      In this Application, the Liner Firm has set forth in some detail the activities to be

11  undertaken and the results obtained on the Debtors' behalf.  The Liner Firm has been an active

12  protector of the interests of the Debtors in a very challenging economic environment.  By quickly

13  assimilating and analyzing the complex issues in the case, the Liner Firm and its professionals have

14  maximized the value of the estate for all parties.  Based on the foregoing, the Liner Firm should be

15  awarded its requested fees, as they are the product of actual and necessary services rendered by the

16  Liner Firm and based upon reasonable amounts of time spent on such services multiplied by a

17  reasonable hourly rate.

18  **VIII.  THE COURT SHOULD AWARD THE LINER FIRM ITS FEES AND COSTS**

19      Section 331 of the Bankruptcy Code provides that:

20           any professional person…may apply to the court not more than once every

21           120 days after an order for relief under a case under this title, or more often if the

22           court permits, for such compensation for services rendered before the date of such

23           an application or reimbursement for expenses incurred before such date as is

24           provided under Section 330 of this title.  After such notice and a hearing, the court

25           may allow and disburse to such applicant such compensation and reimbursement.

26      11 U.S.C. § 331.

27      *Collier on Bankruptcy*, in explaining section 331, states:

28

FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
MEMORANDUM OF POINTS AND AUTHORITIES

0078506/001/ 480714v03

1         [a] court may allow compensation under section 331 in an amount equal to

2    the actual services rendered by Applicant prior to the date of the fee request, i.e.,

3    full compensation, so long as the interim compensation is allowed otherwise

4    comports with the requirements of section 330.

5    3 COLLIER ON BANKRUPTCY, 331.03 [3] at 331-13.

6         As enacted, the Bankruptcy Code expresses a strong legislative preference that attorneys

7    should be awarded full compensation.  Indeed, *In re Western Farmers Association,* 7 B.C.D. 197

8    (Bankr. W.D. Wash. 1981), the bankruptcy judge held that an attorney was entitled to interim

9    compensation in full, explaining that:

10         [i]n considering the Sections 330 and 331, together with their legislative

11    history, I conclude that in making allowances under the Code, Bankruptcy Courts

12    are no Longer restricted by a doctrine of partial payment.  The Code has eliminated

13    the Act's concept of economy of administration and has made fees in bankruptcy

14    matters comparable to those paid in other aspects of legal practice.

15    *Id.* at 198.

16         In *Western Farmers,* the Securities and Exchange Commission had argued for

17    compensation of only part of the attorney's services under the interim provisions, the remainder to

18    be paid in the future.  In rejecting this argument, the Court explained:

19

20         [t]he long range result of adopting the SEC's position would be to drive

21    qualified Counsel away from this Court and out of the bankruptcy practice.  Why

22    would any competent firm with any sort of established clientele spend its time

23    working on a lengthy bankruptcy case, knowing that it might not receive full

24    payment for its services until some indefinite time in the future, if ever?

25    *Id.* at 198-99.

26         Authorizing full payment is also consistent with the priority scheme of the Bankruptcy

27    Code, which contemplates administrative claims having priority over general unsecured claims.

28    The efforts of the Debtors' counsel in this case have resulted in the busy and often contentious

phases of this case being accomplished with a maximum of efficiency and effectiveness. Thus, in view of the strongly expressed legislative intent, the explanation contained in *Collier on Bankruptcy*, the case law decided under the Bankruptcy Code, and the priority requirement of the Bankruptcy Code, the Liner firm respectfully asks that this Court approve the payment of compensation as requested, in full.

## IX. CONCLUSION

Based upon the foregoing, the Liner Firm respectfully requests the Court to issue an order:

1.     Approving the Application and allowing fees in the amount of $570,186.50 and expenses in the amount of $52,615.51 to be paid from the approximate $1,075,000 sum currently held in the Debtors' Bank Account at Union Bank of California;

2.     Authorizing and directing the Debtors to forthwith pay the fees and expenses awarded; and

3.     Granting the Liner Firm such other and further relief as the Court deems just and proper.

Respectfully submitted:

Dated: May 16, 2011

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP

By:   /s/ John M. Kennedy
Peter E. Garrell
John M. Kennedy
Attorneys for Plaintiffs and Debtors in
Possession Steakhouse Partners, Inc.,
Paragon Steakhouse Restaurants, Paragon
of Michigan, Inc.

1

**CERTIFICATE OF SERVICE**

2

3        I am employed in the County of Los Angeles, State of California.  I am over the age of 18
and not a party to the within action.  My business address is 1100 Glendon Avenue, 14th Floor, Los
4  Angeles, California 90024-3503.

5        On May 16, 2011, I served the within document(s) described as:

6  **FINAL FEE APPLICATION OF LINER GRODE STEIN YANKELEVITZ**
   **SUNSHINE REGENSTREIF & TAYLOR LLP FOR ALLOWANCE OF**
7  **FEES AND REIMBURSEMENT OF EXPENSE; MEMORANDUM OF**
   **POINTS AND AUTHORITIES**

8
   on the interested parties in this action as stated on the attached list.

9
   ☒  (BY MAIL  By placing a true copy of the foregoing document(s) in a sealed envelope
10      addressed as set forth above.  I am readily familiar with this firm's practice for collection
        and processing of correspondence for mailing.  Under that practice it would be deposited
11      with the U.S. Postal Service on that same day with postage thereon fully prepaid in the
        ordinary course of business.  I am aware that on motion of the party served, service is
12      presumed invalid if postal cancellation date or postage meter date is more than one day after
        date of deposit for mailing contained in affidavit.

13
   ☐  (BY EXPRESS MAIL) By placing a true copy of the foregoing document(s) in a sealed
14      envelope addressed as set forth on the attached mailing list.  I placed each such envelope for
        collection and overnight mailing following ordinary business practices.  I am readily
15      familiar with this firm's practice for collection and processing of Express Mail to be sent
        overnight by the U.S. Postal Service.  Under that practice, it would be deposited on that
16      same day in the ordinary course of business, with Express Mail postage thereon fully
        prepaid, in a post office, mailbox, sub-post office, substation, mail chute, or other like
17      facility regularly maintained by the U.S. Postal Service for receipt of Express Mail.

18
         I declare that I am employed in the offices of a member of the State Bar of this Court at
19  whose direction the service was made.  I declare under penalty of perjury under the laws of the
   United States of America that the foregoing is true and correct.

20
         Executed on May 16, 2011, at Los Angeles, California.

21

22  Cassandra Jacobo                              /s/ Cassandra Jacobo
   _____            _____
23      (Type or print name)                          (Signature)

24

25

26

27

28

1

**SERVICE LIST**

*In re Steakhouse Partners, Inc., In re Paragon Steakhouse Restaurants, Inc.,*
*and In re Paragon of Michigan Inc.*

**Secured Creditor Class 4 Creditor Trust**
David R. Weinstein
Holme Roberts & Owen LLP
800 West Olympic Boulevard, 4th Floor
Los Angeles, CA 90015
Email: david.weinstein@hro.com

**Class 4 Creditor Trust Trustee**
Scott Avila Trustee
c/o CRG Partners
11835 West Olympic Blvd, Suite 705E
Los Angeles, CA 90064
Email: scott.avila@crgpartners.com

**Office of the United States Trustee**
United States Department of Justice
Lorraine Green, Bankruptcy Analyst
402 West Broadway, Suite 600
San Diego, CA 92101
Email: lorraine.green@usdoj.gov

**20 LARGEST UNSECURED CREDITORS - IN RE STEAKHOUSE PARTNERS**

Mason Matthies
RR Donnelley Recievables, Inc.
4350 La Jolla Village Drive, Suite 300
San Diego, CA 92122

Chief Executive Officer
Accounts Receivable Department
Corporate Trust Center
Delaware Secretary of State
1209 Orange Street
Wilmington, DE 19801

Officer or Managing/General Agent
PR Newswire
GPO Box 5897
New York, NY 10087

**Counsel for Marv T. Levin**
James E. Kroetch
Attorney at Law
3230 Greenhills Drive
Lafayette, CA 94549
Email: jek12345@comcast.net

**20 LARGEST UNSECURED CREDITORS COMMON TO IN RE STEAKHOUSE PARTNERS & PARAGON OF MICHIGAN**

Christopher Forrester
Morrison & Foerster LLP
12531 High Bluff Drive - Suite 100
San Diego, CA 92130
Email: cforrester@mofo.com

Mitchell C. Littman
Littman Krooks LLP
655 Third Avenue
New York, NY 10017
Email: mlittman@littmankrooks.com

0078506/001/ 494551v01

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PARAGON STEAKHOUSE RESTAURANTS**

**Counsel to Creditors Committee**
Ali M.M. Mojdehi
Anne W. Hamann
Baker & McKenzie LLP
12544 High Bluff Drive, Third Floor
San Diego, CA  92130-3051
Email: ali.m.m.mojdehi@bakernet.com
        anne.w.hamann@bakernet.com

**TAXING AUTHORITIES**

Michael A. Cox, Esq.
Attorney General
Heather Durian, Esq.
(DurianH@michigan.gov
Amy M. Paterson, Esq.
Assistant Attorneys General
Michigan Department of Treasury
(ADMINISTRATIVE)
Revenue & Collections Division
G. Mennen Williams Building, 2nd Floor
525 Ottawa Street, 2nd Floor
PO Box 30754
Lansing, MI  48909

Internal Revenue Service
PO Box 21126
Philadelphia, PA  19114

Internal Revenue Service
Attn: E. Turman, Revenue Officer
880 Front Street
San Diego, CA 92101

Laura E. Duffy, Esq.
United States Attorney
Jeffrey A. Schlei, Esq.
(Jeffrey.A.Schlei@irscounsel.treas.gov)
Special Assistant United States Attorney
701 B Street, Suite 901
San Diego, CA  92101

David Wilcox
Nevada Department of Taxation
555 E. Washington Avenue #1300
Las Vegas, NV 89101

0078506/001/ 494551v01

1

2

**REQUEST FOR SPECIAL NOTICE**

3

**Request for Special Notice**
Challenge Dairy Products, Inc.
Ruth Elin Auerbach, Esq.
711 Van Ness Ave., Suite 440
San Francisco, CA 94102
EMail: attorneyruth@sbcglobal.net

**Counsel for James Watt – Landlord
for Roseville, CA**
H Christopher Hittig
44 Montgomery Street, - Suite 3780
San Francisco, CA 94104
EMail: Christopher @hittig.com

4

5

6

James Watt
1 Hallidie Plaza, Suite 701
San Francisco, CA 94102

**Counsel for Iron Mountain
Information Management, Inc.**
Frank F. McGinn, Esq.
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
EMail: ffm@bostonbusinesslaw.com

7

8

9

10

11

**Request for Special Notice – Attorneys for
Central Meat and Provision**
Drew L. Lyman, Esq.
Lyman & Potente, APLC
2635 Camino Del Rio South, Suite 201
San Diego, CA 92108
EMail: dlyman@lymanpotente.com

Mark Edward Bradshaw, Esq.
Shulman Hodges & Bastian LLP
26632 Towne Centre Drive - Suite 300
Foothill Ranch, CA 92610
EMail: mbradshaw@shbllp.com

12

13

14

15

**Request for Special Notice – Attorney for
Mountain Jacks in Acme Michigan and
Counsel for Charters – Isabella Bank –
Landlord for N. Traverse City, MI**
Richard W. Labowe, Esq.
Labowe, Labowe & Hoffman, LLP
1631 W. Beverly Blvd., 2nd Floor
Los Angeles, CA 90026
E-Mail:            Llhlaw1631@aol.com

**Request for Special Notice - Counsel
for Audie Dudum – Landlord for
Lafayette, CA**
Rami S. Shamieh, Esq.
Law Offices of A. Nick Shamiyeh
2221 Olympic Blvd., Suite 100
Walnut Creek, CA 94595
EMail: rshamieh@gmail.com

16

17

18

19

20

**Request for Special Notice - Counsel for
Tom Maceri & Son, Inc.**
Lisa Torres
William P. Fennell
Law Offices of William P. Fennell, APLC
1111 Sixth Avenue - Suite 404
San Deigo, CA 92101

**Request for Special Notice – Attorneys
for AFCO Acceptance Corporation**
Elissa D. Miller, Esq.
Sulmeyer Kupetz
333 South Hope Street - Thirty-Fifth
Floor
Los Angeles, CA 90071
Email: emiller@sulmeyerlaw.com

21

22

23

24

25

26

27

28

4

**Request for Special Notice**
Madeleine C. Wanslee
Gust Rosenfeld P.L.C.
201 E. Washington, Suite 800
Phoenix, AZ 85004-2327
EMail: mwanslee@gustlaw.com

**Request for Special Notice – Attorneys for National Retail Properties, Inc. – Landlord for Centerville, OH**
Zachary J. Bancroft, Esq.
Lowndes Drosdick Doster Knter And Reed, P.A.
450 South Orange Avenue - Suite 250
POB 2809
Orlando, FL 32802
EMail: zachary.bancroft@lowndes-law.com

**Request for Special Notice - Landlord for Willow Creek Rd. San Diego, CA**
BFC-Willow Creek, LLC
Attn: Eric Luna
Bonair Financial Corporation
3189 American Saddler Drive
Park City, Utah 84060

**Request for Special Notice - Co-Counsel for Willow Creek Rd., San Diego, CA**
Jean M. Heinz
Heinz & Feinberg
707 Broadway #1800
San Diego, CA 92101-5311
EMail: jeanheinz@nethere.com

**Request for Special Notice – For County of Kern**
**State of California**
Jackie Denney
Treasurer/Tax Collector
County of Kern - State of California
Bankruptcy Division
P. O. Box 579
Bakersfield, CA 93302-0579
EMail: bankruptcy@co.kern.ca.us
        leona@co.kern.ca.us

**Request for Special Notice - Counsel for Oakland County Treasurer**
Richardo I. Kilpatrick, Esq.
Kilpatrick & Associates, P.C.
903 North Opdyke Road - Suite C
Auburn Hills, MI 48326

**Request for Special Notice - Counsel for Stuart Harris and SMH Investments, LLC**
Robert E. Hurlbett, Esq.
Hurlbett & Faucher
3324 State Street, Suite O
Santa Barbara, CA 93105
EMail: bob@hf-bklaw.com

**Request for Special Notice - Counsel for State Board of Equalization**
Randy M. Ferris, Esq.
Chief Counsel
Robert W. Lamber, Asst. Chief Counsel
Victoria C. Baker Esq.
(Victoria.Baker@boe.ca.gov)
Christine Levine, Esq.
(Christine.levine@boe.ca.gov)
California State Board of Equalization
450 "N" Street MIC: 82
Sacramento, CA 95814

5

1

**Request for Special Notice - Counsel for
Respondent Susan Schulze-Claasen**
2
Adam A. Lewis, Esq.
**ALewis@mofo.com**
3
Morrison & Foerster LLP
425 Market Street, 32nd Floor
4
San Francisco, CA  94105-2482

5

6
**US CHAPTER 7 TRUSTEE**

7

Bankruptcy Trustee                          **Counsel for James L. Kennedy**
8
James L. Kennedy                            Gerald N. Sims
PO Box 28459                                Pyle Sims Duncan & Stevenson
9
San Diego, CA 92198-0459                    401 B Street, Suite 1500
San Diego, CA 92101
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

0078506/001/ 494551v01