# EXHIBIT G

//0v0

CSD 1001C [11/15/04]
Name, Address, Telephone No. & I.D. No.
Julia W. Brand, Esq. (SBN 121760)
Enid M. Colson, Esq. (SBN 189912)
Liner Yankelevitz Sunshine & Regenstreif, LLP
1100 Glendon Ave., 14th Floor
Los Angeles, CA 90024-3503
(310) 500-3500

Order Entered on
December 19, 2008
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
135 West "F" Street, San Diego, California 92101-6991

In re

STEAKHOUSE PARTNERS, INC., a Delaware corporation,

Debtor-in-Possession.

BANKRUPTCY NO.
08-04147-11 (Jointly Administered with
Case Nos. 08-4152-11 & 08-4153-11)

Date of Hearing: December 10, 2008
Time of Hearing: 10:00 a.m.
Name of Judge:   James W. Meyers

## ORDER APPROVING MOTION TO APPROVE THE STIPULATION AMONG THE DEBTORS IN POSSESSION AND SECURED CREDITORS T. SCOTT AVILA, CREDITOR TRUSTEE OF THE CLASS IV CREDITOR TRUST RE: USE OF CASH COLLATERAL

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through 36 with exhibits, if any, for a total of 36 pages, is granted.  Motion Docket Entry No. 407.

//

//

//

//

//

DATED:

December 19, 2008

Judge,

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification
under Fed. R. Bankr. P. 9011 that the relief in the
order is granted by the court.

Submitted by:

Enid M. Colson, Esq. (SBN: 189912)
Firm Name

By: /s/ Enid M. Colson
    Attorney for ☒ Movant ☐ Respondent

0078506/001/414602v06

CSD 1001C [11/15/04] Page 2 of 4
Order on Motion re Approval of Stipulation to Use Cash Collateral
Debtor: *In re Steakhouse Partners, Inc.*                                          Case No. 08-04147-11

Upon consideration of the Motion To Approve the Stipulation among the Debtors in Possession and

Secured Creditors T. Scott Avila, Creditor Trustee of The Class IV Creditor Trust Re: Use Of Cash Collateral

dated November 26, 2008 and entered as docket number 407 (the "Motion") of the Debtors Paragon Steakhouse

Restaurants, Inc. and Paragon of Michigan, Inc., debtors and debtors-in-possession herein (the "Debtors"),

requesting the issuance and entry of an order approving a stipulation ("Stipulation") authorizing the Debtors to

use cash collateral ("Cash Collateral") of the Class IV Creditor Trust (the "Creditor Trust"); the Court having

subject matter jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C. § 1334;

consideration of the Motion and the relief requested therein being a "core" proceeding pursuant to 28 U.S.C. §

157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; due and proper notice of

the Motion having been provided, it appearing that no other notice need be given; and a hearing on the Motion

having been held before the Court on December 10, 2008 at 10:00 a.m. (Pacific Time) (the "Hearing"); upon

consideration of the objection of Tom Maceri & Son, Inc. ("Maceri & Son"), and the response of the Official

Committee of Unsecured Creditors (the "Committee") to the Motion and no other objections having been filed

and upon the record of the Hearing including stipulations of the Committee and Maceri & Sons on the record; it

appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates and creditors;

and after due deliberation, and sufficient cause appearing therefor,

IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:

A.      Notice of the Motion and of the Hearing was given in accordance with applicable law, as

evidenced by the affidavits of service on file with the Clerk of the Court;

B.      The Motion is hereby approved, as modified herein;

C.      The Stipulation, a copy of which is attached hereto as Exhibit "A" is hereby approved, as

modified herein;

2

CSD 1001C [11/15/04] Page 3 of 4
Order on Motion re Approval of Stipulation to Use Cash Collateral
Debtor: *In re Steakhouse Partners, Inc.*                                    Case No. 08-04147-11

D.    The Debtors are hereby authorized to use the Cash Collateral subject to the terms and conditions of the Stipulation subject to availability and to pay, as authorized, the expenses described in the budget attached as exhibit "1" to the Stipulation (the "Budget") covering the period October 27, 2008 - January 10, 2009, or such later date as may be agreed to in writing by the Creditor Trustee and the Debtors or as ordered by this Court including payment in the amount of $50,000 for payment of Debtors' professional fees (the "Debtors' Professional Fee Carve Out"). The Budget may be modified with the written consent of the Debtors and the Creditor Trustee;

E.    The Budget is hereby modified to include payment of the PACA trust claim of Piazza Produce filed on August 29, 2008 and the PACA trust claim of Maceri & Son, Inc. filed on October 17, 2009, in the amount of each such PACA trust claim and each such PACA trust claim is hereby allowed;

F.    The Budget is hereby modified to include payment in the amount of $25,000 to the professionals employed by the Committee to be used toward the payment of their fees and expenses (the "Committee Professional Fee Loan"). The Committee acknowledges that such amount is considered a loan by the Creditor Trustee and is subject to disgorgement if subsequently ordered by this Court;

G.    The Creditor Trustee will receive a dollar for dollar distribution from the Cash Collateral fund, for all amounts paid pursuant to the Budget, including all but not limited to funds paid on the Debtor's Professional Fee Carve Out and the Committee Professional Fee Loan, at the time such payments are made as free and clear property of the estate;

H.    Except as modified herein, the terms of the Stipulation are approved; and

I.    The Debtor, the Creditor Trustee, the Committee, Piazza Produce and Maceri & Son expressly reserve all their rights with respect to the relief requested in the Motion and the issues raised at the Hearing.

**\*\* END OF ORDER \*\***

3

0078506/001/414602v06                                    *Signed by Judge James W. Meyers December 19, 2008*

CSD 1001C [11/15/04] Page 4 of 4
Order on Motion re Approval of Stipulation to Use Cash Collateral
Debtor: *In re Steakhouse Partners, Inc.*                                    Case No. 08-04147-11


APPROVED AS TO FORM AND CONTENT:


RICHARDSON & PATEL, LLP


By:   */s/ Sharon Weiss*
Sharon Weiss
Counsel for T. Scott Avila, Creditor Trustee of The
Class IV Creditor Trust


BAKER & MCKENZIE LLP                    LAW OFFICES OF WILLIAM P. FENNELL, APLC


                                        By:   *see attached page*
By:   */s/ Christine E. Baur*                 Lisa Torres
Counsel for the Committee of Unsecured Creditors    Counsel for Tom Maceri & Son, Inc.
of Paragon Steakhouse Restaurants


dbKerr Law


By:   */s/ Douglas B. Kerr*
        Douglas B. Kerr,
        Attorneys for Piazza Produce, Inc.

0078506/001/414602v06                    *Signed by Judge James W. Meyers December 19,2008*

CSD 1001C [11/15/04] Page 4 of 4
Order on Motion re Approval of Stipulation to Use Cash Collateral
Debtor: *In re Steakhouse Partners, Inc.*

Case No. 08-04147-11

APPROVED AS TO FORM AND CONTENT:

RICHARDSON & PATEL, LLP

By:_____
Sharon Weiss
Counsel for T. Scott Avila, Creditor Trustee of The
Class IV Creditor Trust

BAKER & MCKENZIE LLP

By:_____
Counsel for the Committee of Unsecured Creditors
of Paragon Steakhouse Restaurants

LAW OFFICES OF WILLIAM P. FENNELL, APLC

By:_____
    Lisa Torres
Counsel for Tom Maceri & Son, Inc.

dbKerr Law

By:_____
    Douglas B. Kerr,
    Attorneys for Piazza Produce, Inc.

4

0078506/001/ 414602v06

*Signed by Judge James W. Meyers December 19, 2008*

# EXHIBIT A

Signed by Judge James W. Meyers December 19,2008

1  DAVID R. WEINSTEIN (State Bar No. 082881)
   SHARON Z. WEISS (State Bar No. 169446)
2  RICHARDSON & PATEL, LLP
   10900 Wilshire Boulevard, Suite 500
3  Los Angeles, California 90024
   Telephone (310) 208-1182
4  Facsimile (310) 208-1154
   dweinstein@richardsonpatel.com
5  sweiss@richardsonpatel.com

6  Attorneys for T. Scott Avila,
   Creditor Trustee of the Class IV Creditor Trust

7

8                  UNITED STATES BANKRUPTCY COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                       SAN DIEGO DIVISION

11

12  In re                        )   Bk. No. 08-04147-11
                                 )       [Chapter 11]
13  STEAKHOUSE PARTNERS, INC., a  )
    Delaware Corporation,        )   [Joint administered with Case Nos.: 08-
14                               )   04152-11 and 08-04153-11]
          Debtor.                )
15  _____  )
                                 )   STIPULATION AMONG THE DEBTOR
16  X Affects all Debtors        )   IN POSSESSION AND SECURED
    __ Affects Steakhouse Partners, Inc.  )  CREDITOR T. SCOTT AVILA,
17                               )   CREDITOR TRUSTEE OF THE CLASS IV
    __ Affects Paragon Steakhouse )  CREDITOR TRUST RE USE OF CASH
18     Restaurants, Inc.         )   COLLATERAL
    __ Affects Paragon of Michigan, Inc.  )
19                               )
                                 )   DATE:
20                               )   TIME:
                                 )   PLACE:  Courtroom 218
21                               )           West F Street
                                 )           San Diego, CA 92101
22                               )
                                 )   Judge:   The Honorable James W. Meyers
23

24

25

26

27

28

h:\h\c\1570.092_cash.collateral.stip.REVISED.wpd
11/25/08 (8:14 pm)

*Signed by Judge James W. Meyers December 19, 2008*

1  TO:      THE HONORABLE JAMES W. MEYERS, UNITED STATES BANKRUPTCY

2            JUDGE AND ALL OTHER PARTIES IN INTEREST:

3

4            STEAKHOUSE PARTNERS, INC., a Delaware corporation; PARAGON

5  STEAKHOUSE RESTAURANTS, a Delaware corporation; and PARAGON OF

6  MICHIGAN, INC., a Wisconsin corporation, the debtors and debtors-in-possession

7  herein ("Debtors") and T. Scott Avila, Creditor Trustee of the Class IV Creditor Trust

8  ("Creditor Trustee"), hereby stipulate and agree as follows:

9

10                                         I.

11                               **JURISDICTION**

12           This Court has jurisdiction over the chapter 11 cases, and the parties and

13  property affected hereby, pursuant to 28 U.S.C. 157(b) and 28 U.S.C. § 1334.  This

14  proceeding constitutes a core proceeding as defined in 28 U.S.C. 157(b)(2).  Venue of

15  this bankruptcy case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

16

17                                        II.

18                            **FACTUAL RECITALS**

19           A.      On February 15, 2002, Steakhouse Partners, and on February 19, 2002

20  Paragon Restaurants and Paragon Michigan filed their first voluntary petitions for

21  relief under Chapter 11 of the Bankruptcy Code in the Central District of California,

22  Riverside Division.  The Bankruptcy Court entered an order directing the joint

23  administration on February 22, 2002. Steakhouse Partners, Paragon Restaurants,

24  and Paragon Michigan filed a First Amended Joint Plan of Reorganization of

25  Steakhouse Partners, Inc. et al, dated September 29, 2003 and amended November 4,

26  2003 (the "Plan").  The Court entered an order confirming the Plan on December 19,

27  2003.

28  / / /

1          B.     The Plan provided for the creation of the Steakhouse Partners Class IV

2 Creditors Trust (the "Class IV Trust") for the purpose of collecting, maintaining and

3 distributing the Steakhouse Partners Class 4 Creditors Trust Assets. T. Scott Avila is

4 the trustee of the Class IV Trust. The trust assets consisted of (i) a $1 million

5 payment within thirty (30) days of the Plan's effective date; (ii) payments under the

6 Class 4 Creditors Note in the principal amount of $5,030,000, and secured by the

7 Class 4 Creditors Note Security Documents; (iii) 500,000 shares of the New Common

8 Stock representing ten percent (10%) of the New Common Stock; and (iv) Litigation

9 Claims. The Class IV Trust was also entitled to a one-time payment of $17,000 on the

10 Plan's Effective Date relating to reimbursement of some costs. The Plan became

11 effective on December 31, 2003.

12          C.     Prior to May 2007, the Debtors only made limited payments to the

13 Creditor Trust under the original Plan and Class IV Note (totaling only

14 $1,192,000.00). The Creditor Trustee and the Debtors entered into a settlement

15 agreement modifying the terms of the Class IV Creditors' Note which was approved by

16 the bankruptcy court on August 10, 2006 in the first bankruptcy case.

17          D.     The Debtors failed to make the payments required under the

18 Settlement Agreement. On or about May 18, 2007, the Creditor Trustee properly sent

19 a notice to the Debtors that they were in default under the Settlement Agreement.

20 Because the Debtors were not entitled to cure the payment of the Deposit, the Debtors

21 were in material default as of September 21, 2006.

22          E.     The Debtors and the Creditor Trustee executed a forbearance

23 agreement. Under the forbearance agreement, the Debtors were required to either

24 make cash payments by certain trigger dates, or have entered into asset purchase

25 agreements for the equivalent amount by the same trigger dates. The Debtors

26 complied with the forbearance agreement to the extent that they entered into the

27 assets purchase agreements, and monetized approximately $928,000 to the Creditor

28 Trustee.

F.    The Creditor Trustee asserts that to date approximately $4.8 Million remains outstanding, plus attorneys fees, accrued interest and expenses (the "Trust Secured Claim") exclusive of proceeds from the sale of the Cliffhouse Restaurant described below.

G.    On or about May 15, 2008, the Debtors filed a second petition for relief under Chapter 11 of Title 11, styled as *In re Steakhouse Partners, Inc., a Delaware corporation*, jointly administered under case number 08-04147-11 in the Southern District of California.

H.    On June 20, 2008, the Court granted the sale of the Debtors' Cliffhouse Restaurant. The net proceeds of the sale of $541,697.13 were paid to the Creditor Trustee on account of its secured claim.

I.    On June 27, 2008, the Bankruptcy Court entered an order approving the Debtors' sale procedures. This Court entered orders approving the sale of ten of the Debtors' restaurants and the personal property assets and inventory of two additional restaurants to date.

J.    As a result of the sales of the restaurants and personal property assets, the Debtors have received approximately $ 2.3 Million gross and $ 1.6 Million net (after paying cure costs and the California State Board of Equalization). The Debtors have agreed to finance two restaurants and expect to receive about another $ 265,000 over the next two years. The Debtors will receive an additional $650,000 in cash proceeds and a note in the amount of $175,000 from the sale of their Sandy and Auburn Hills Restaurants.

K.    The Debtors' operations will cease within the next two weeks after the closure of their one remaining restaurant. The Debtors are no longer generating funds in the regular course of business. Rather, all of the Debtors' money and assets from the sale of the restaurants ("Sale Proceeds") are the Collateral of the Creditor Trustee.

///

h:\h\e\1570.092_cash.collateral.stip.REVISED.wpd
11/25/08 (8:14 pm)

-4-

## II.

## NEED FOR AND USES OF CASH COLLATERAL.

As a result of the Creditor Trustee's liens upon, and security interests in, the Collateral, and by virtue of Bankruptcy Code section 363(c)(2), the Debtor is unable to use the "Cash Collateral" (as such term is defined below) without the consent of the Creditor Trustee or the authorization of the Court after notice and a hearing. The Debtors have an immediate need for the use of Cash Collateral for the preservation of the bankruptcy estate and the maintenance and continued operation of its business to pay remaining employees, suppliers and other trade creditors on a current basis in order to close the sales of the remaining restaurants. The Debtors have requested immediate entry of this Stipulation and an order of the Bankruptcy Court approving this Stipulation (the "Approval Order") pursuant to Bankruptcy Rule 4001(b)(2) to be effective upon entry of the Approval Order.

## III.

## AGREEMENT TO USE OF CASH COLLATERAL

Based upon the foregoing findings and conclusions, and good cause appearing therefore,

IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED by and among the Debtors and the Creditor Trustee, as follows:

A.    Incorporation.  The recitals contained above are incorporated herein by this reference.

B.    Indebtedness.  The Debtors hereby acknowledge and agree that the Debtors are liable to the Creditor Trustee in excess of $4,833,166 through August 15, 2008, plus accruing interest, expenses and professional fees.

C.    Validity of Claims.  Upon the entry of the Approval Order, the Debtors acknowledge and agree to the following:

1.    The Trust Secured Claim constitutes an allowed claim under the

1   Bankruptcy Code in the amount of $4,833,166, plus accruing interest, expenses and

2   professional fees to the extent allowed by the Court.

3          2.      The Trust Secured Claim is secured by a valid, perfected, and

4   indefeasible, security interest in the Collateral.

5      D.      Collection and Use of Cash Collateral.

6          1.      *"Cash Collateral" Defined.* "Cash Collateral" includes, without

7   limitation, the Sale Proceeds in the Debtors, deposit accounts, or other cash

8   equivalents whenever acquired in which the Debtors have an interest, and includes

9   any and all proceeds or products, therefore or otherwise generated by or derived from

10  the Collateral (the "Cash Use Amount").

11         2.      *DIP Account.* Effective on the Approval Date, the Creditor

12  Trustee consents to the use by the Debtors of the Cash Collateral as set forth in, and

13  in accordance with the terms and conditions of the Budget (defined below).

14         3.      *Permitted Uses of Cash Collateral.* So long as this Stipulation

15  and the Approval Order shall remain in effect, the Debtors are authorized to use the

16  Cash Use Amount, subject to the terms and conditions of this Stipulation and the

17  Approval Order, and to pay, when due, the expenses described in the budget, the form

18  of which is attached hereto as Exhibit "1" (the "Budget") and for costs and fees

19  associated with the implementation of the Budget in an amount up to $50,000 for

20  payment of Debtors' professional fees (the "Professional Fee Carve Out"). The Debtors

21  and the Creditor Trustee have the right to agree to any amendments or modifications

22  to the Budget or Budget Period without any further order of the Bankruptcy Court,

23  provided, however, that any such agreement must be in writing and signed by the

24  parties.

25         4.      *Budgeted Use.* The Debtors may use the Cash Use Amount up to

26  the amounts and for the purposes set forth in the Budget covering the period

27  commencing from October 27, 2008 to December 10, 2008, or such later date as may

28  be agreed to in writing by the Creditor Trustee, and the Debtors or as ordered by the

Court (the "Budget Period"), under the terms of this Agreement.

5.    *Adequate Protection to the Creditor Trustee and Escrow Funds.* In lieu of adequate protection to the Creditor Trustee's interest in and consent to use of the Cash Collateral and as security for Debtors' performance under this Stipulation, the Debtors shall transfer to the Creditor Trustee an amount equal to the total Budget plus the Professional Fee Carve Out as free and clear property of the estate.  In the event the Debtors and the Creditor Trustee amend or modify the Budget or the Budget period, it is specifically understood and agrees that the Creditor Trustee shall be paid an equal amount of any such modification.  All sums paid to the Creditor Trustee by the Debtor pursuant to this paragraph shall be applied against the Class IV Note in accordance with its terms and the Bankruptcy Code.

6.    *Protection of Creditor Trustee's Interests.* As protection for the expected diminution in value of the interests of the Creditor Trustee, in compliance with section 506(b) of the Bankruptcy Code, and in consideration of consent to the Debtors' use of the Cash Use Amount as set forth in this Stipulation:

(a)    To the extent any party successfully obtains an order or judgement against the Creditor Trustee under 11 U.S.C. 506(c), the Debtors specifically acknowledge that the usage of Cash Collateral was a benefit to the estate and any cash collateral advanced pursuant to this Stipulation must be calculated in favor of the Creditor Trustee and deducted from such order or judgement in the event of a surcharge of the Collateral.

(b)    Under section 507(b) of the Bankruptcy Code, if the protection granted above is insufficient to satisfy in full the claims of the Creditor Trustee, the Creditor Trustee will be granted allowed claims under section 503(b) of the Bankruptcy Code in the amount of any such insufficiency with respect to the diminution of the Cash Collateral of the Creditor Trust.  Such claim shall have the priority provided by section 507(b) of the Bankruptcy Code, and no claim for costs or expenses of administration that have been or may be incurred in this case, any

Signed by Judge James W. Meyers December 19, 2008

1  conversion of this case to a case under chapter 7 of the Bankruptcy Code, or otherwise,

2  and no priority claims, are or will be senior to or on a parity with any such claim of

3  the Creditor Trustee, subject only to fees payable to Debtors' professionals, fees

4  payable to the Office of the United States Trustee under 28 U.S.C. § 1930 and fees or

5  costs owing to the Clerk of the Court.

6      E.    No Postpetition Debt; No Other Liens. The Debtors represent that it

7  will not incur any post-petition indebtedness (except in the ordinary course of the

8  Debtors' business as heretofore conducted), whether pursuant to section 364 of the

9  Bankruptcy Code or otherwise, other than post-petition professional fees and costs,

10  and fees to the Office of the United States Trustee, and agrees not to seek court

11  approval of any such post-petition indebtedness on an ex parte or short notice basis

12  except with prior notice to the Creditor Trustee.

13      F.    Termination of Right to Use Cash Collateral. Unless extended in

14  writing by the Debtors and the Creditor Trustee, the Debtors' right to use the Cash

15  Collateral shall terminate on December 10, 2008. Notwithstanding the foregoing,

16  prior to the Debtors' use of cash collateral, the Debtors must obtain the Creditor

17  Trustees written approval on a weekly basis, starting on November 25, 2008, before

18  the Debtors are authorized to use such Cash Collateral.

19      G.    No Waiver by Any Party. This Stipulation and the Approval Order do

20  not prejudice the right of the Creditor Trustee to seek relief from the automatic stay of

21  section 362 of the Bankruptcy Code, or any other relief in this case, including

22  demands for adequate protection, objections and claims relating to applications or

23  motions for adequate protection, or the use, sale, or other disposition of the Cash

24  Collateral. This Stipulation is also without prejudice to the rights of any party to

25  oppose any such relief requested. Except as otherwise expressly set forth in this

26  Stipulation, this Stipulation is not a waiver or modification of any of the rights of the

27  Creditor Trustee, the Debtors or the Unsecured Creditors' Committee and the

28  Creditor Trustee does not have any obligation or duty to any other entity to exercise of

1  any of their rights, remedies, claims, powers, benefits, and privileges. Delay in or

2  failure to exercise any of their rights, remedies, claims, powers, benefits, or privileges

3  does not constitute a waiver, nor subject the Creditor Trustee to any liability to any

4  entity, and no other entity may rely upon any delay or failure or in any way seek to

5  assert a defense to any obligation owing based on any delay or failure.

6      H.  <u>Successors and Assigns; Survival</u>. The provisions of this Stipulation

7  shall be binding upon and inure to the benefit of the Creditor Trustee, the Debtors

8  and their estates, and the respective successors and assigns of each of the foregoing.

9      I.  <u>Modification of Stipulation and Effect of Modification of Order</u>. The

10  terms and conditions set forth in this Stipulation may not be altered, modified, or

11  affected without the prior written consent of the Debtors, or the Creditor Trustee. If

12  any or all of the provisions of the Approval Order are hereafter modified, vacated,

13  terminated, amended or stayed, the consent to Debtors' use of Cash Collateral shall

14  cease immediately thereupon; provided, however, that no such occurrence shall affect,

15  limit or modify the validity of any claim for any amounts of Cash Collateral used

16  pursuant to this Stipulation and the Approval Order and further provided that the

17  Creditor Trustee may determine, in his sole discretion, that any modification of the

18  kind described above is immaterial and shall not cause consent to the use of Cash

19  Collateral hereunder to cease.

20      J.  <u>Unenforceability</u>. If the Court does not approve this Stipulation for any

21  reason, then this Stipulation has no effect, and neither the Stipulation nor any action

22  or procedure taken, nor any statement made, in connection with the negotiation,

23  preparation, formulation or seeking approval of this Stipulation may be referred to by

24  any entity in connection with any proceeding or action, whether in this case or

25  elsewhere.

26      K.  <u>No Agreement to Provide Financial Accommodation</u>. No provision of

27  this Stipulation and the Approval Order shall in any way impose upon the Creditor

28  Trustee any duty or obligation to provide any financing or financial accommodation to

h:\b\d\1670.092_cash.collateral.stip.REVISED.wpd
11/25/08 (6:14 pm)

-9-

1  Debtor or any other party, to collect, sell, lease or otherwise dispose of any of the

2  Creditor Trustee's collateral, to proceed against any party, person, individual or

3  entity, to proceed against or exhaust any security held by the Creditor Trustee, or any

4  other party, person, individual or entity, or to otherwise pursue any action, right or

5  remedy in the Creditor Trustee's power whatsoever.

6  L.    Consent and Mutual Agreement.  Whenever any action may be taken

7  under this Stipulation upon the prior written consent of the Creditor Trustee or the

8  prior mutual written agreement of the parties, the action may be taken without any

9  further notice or action or order of the Bankruptcy Court.

10  M.    Neutral Construction.  Each of the parties hereto has been involved in

11  the negotiation, review, and execution of this Stipulation and each has had the

12  opportunity to receive independent legal advice from attorneys of its choice with

13  respect to the advisability of making and executing this Stipulation.  In the event of

14  any dispute or controversy regarding this Stipulation, the parties hereto shall be

15  considered to be the joint authors of this Stipulation and no provision of this

16  Stipulation and the Approval Order shall be interpreted against a party hereto

17  because of authorship.

18  N.    Headings.  The parties acknowledge that the headings set forth herein

19  are for convenience only and shall not be used to limit, define, or interpret the rights

20  and responsibilities of the parties hereunder.

21  O.    Power of Representatives.  Any party executing this Stipulation and

22  Approval Order in a representative capacity warrants that he or she is duly

23  authorized and empowered to do so.

24  P.    Survival of Obligations.  The provisions of this Stipulation and any

25  actions taken in accordance with this Stipulation survive entry of any order that may

26  be entered:  (a) confirming any plan in any case of any Debtors; (b) converting this

27  Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; or (c) dismissing

28  this case.  Unless otherwise ordered by the Bankruptcy Court, the claims and liens on

1  the Cash Collateral and the Postpetition Collateral continue in full force and effect

2  and maintain their priority until all the obligations owed under the terms of the Loan

3  Documents and this Stipulation are paid in full.

4          Q.    Binding Effect. This Stipulation is binding on and inures to the benefit

5  of the Debtor, its estate, any representative of the Debtors or its estate, any trustee

6  appointed in this case, whether under Chapter 11 or Chapter 7, any examiner with

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

h:\h\c\1570.092_cash.collateral.stip.REVISED.wpd
11/26/08 (6:14 pm)

-11-

1  expanded or special powers to operate the Debtors' business appointed in this case,

2  the Creditor Trustee, and their respective successors and assigns.

3

4      WHEREFORE, the parties request that the Court enter an order approving

5  this Stipulation.

6

7  DATED:  November _____, 2008    STEAKHOUSE PARTNERS, INC., a Delaware
                                   corporation

8

9                                  By _____

10

11                                 Its:_____

12

13  DATED:  November _____, 2008    PARAGON STEAKHOUSE RESTAURANTS, a
                                   Delaware corporation

14

15                                 By _____

16

17                                 Its:_____

18  DATED:  November _____, 2008    PARAGON OF MICHIGAN, INC., a Wisconsin
                                   corporation

19

20

21                                 By _____

22                                 Its:_____

23  DATED:  November _____, 2008    STEAKHOUSE PARTNERS CLASS IV CREDITOR
                                   TRUST

24

25

26                                 By _____
                                        T. SCOTT AVILA

27                                 Its: Creditor Trustee

28

h:\h\c\1570.092_cash.collateral.stip.REVISED.wpd                    -12-
11/25/08 (8:14 pm)

1  expanded or special powers to operate the Debtors' business appointed in this case,

2  the Creditor Trustee, and their respective successors and assigns.

3

4           WHEREFORE, the parties request that the Court enter an order approving

5  this Stipulation.

6

7  DATED: November 24, 2008        STEAKHOUSE PARTNERS, INC., a Delaware
                                    corporation
8

9                                  By _____

10

11                                 Its: _____EVP_____

12

13 DATED: November 24, 2008        PARAGON STEAKHOUSE RESTAURANTS, a
                                    Delaware corporation
14

15                                 By _____

16

17                                 Its: __President__

18

19 DATED: November 24, 2008        PARAGON OF MICHIGAN, INC., a Wisconsin
                                    corporation
20

21                                 By _____

22                                 Its: __President__

23

24 DATED: November ____, 2008       STEAKHOUSE PARTNERS CLASS IV CREDITOR
                                    TRUST
25

26                                 By _____
                                         T. SCOTT AVILA
27                                 Its: Creditor Trustee

28

h:\h\s\1670.062_cash.collateral.stip.REVISED.wpd
11/25/08 (4:34 pm)                                     -12-

Signed by Judge James W. Meyers December 19, 2008

1  expanded or special powers to operate the Debtors' business appointed in this case,

2  the Creditor Trustee, and their respective successors and assigns.

3

4        WHEREFORE, the parties request that the Court enter an order approving

5  this Stipulation.

6

7  DATED: November ____, 2008      STEAKHOUSE PARTNERS, INC., a Delaware
                                   corporation

8

9                                  By _____

10

11                                 Its: _____

12

13  DATED: November ____, 2008     PARAGON STEAKHOUSE RESTAURANTS, a
                                   Delaware corporation

14

15                                 By _____

16

17                                 Its: _____

18  DATED: November ____, 2008     PARAGON OF MICHIGAN, INC., a Wisconsin
                                   corporation

19

20

21                                 By _____

22                                 Its: _____

23  DATED: November ____, 2008     STEAKHOUSE PARTNERS CLASS IV CREDITOR
                                   TRUST

24

25

26                                 By _____
                                        T. SCOTT AVILA

27                                 Its: Creditor Trustee

28

b:\\t\e\15Y0.092_cash.collateral.stip.REVISED.wpd
11/26/08 (4:34 pm)                    -12-

# EXHIBIT 1

*Signed by Judge James W. Meyers December 19,2008*

| Cash Expenses | Current Amount Requested | Week End Fri 11/21/08 | Week End Fri 11/28/08 | Total |
|---|---|---|---|---|
| **Payroll Expense** | | | | |
| Stop Pay - 5 previous loc. | $ 30,308 | $ - | $ - | $ 30,308 |
| Regular payroll (11/11/08) | $ 207,096 | $ - | $ - | $ 207,096 |
| Subtotal | $ 237,404 | $ - | $ - | $ 237,404 |

# EXHIBIT B

<u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release (the "Settlement Agreement") is entered into by and among Paragon Steakhouse Restaurants, Inc., a Delaware corporation (the "<u>Paragon</u>") and Steakhouse Partners, Inc., a Delaware corporation ("Steakhouse"), and T. Scott Avila as the Creditor Trustee of the Steakhouse Partners Class 4 Creditor Trust (the "Creditor Trustee"), on the one hand, and Rewards Network Establishment Services Inc., formerly known as iDine Restaurant Group Inc., a Delaware corporation ("<u>Rewards Network</u>"), on the other hand, in full and complete settlement of all of the parties' claims against each other through and including June 30, 2007.

RECITALS

WHEREAS, Rewards Network and Paragon are parties to that certain Old Form Cash Advance Agreements executed prior to the date hereof (collectively the "<u>Cash Agreement</u>");

WHEREAS, prior to the date hereof, Paragon executed and delivered a Security Agreement dated May 4, 2001 in favor of Rewards Network. Such Security Agreement was modified and amended by that certain Agreement between Paragon and Rewards Network made in June 2002 and modified by the Plan (as defined below) (as modified and amended, the "<u>Security Agreement</u>");

WHEREAS, prior to the date hereof, Steakhouse executed and delivered a Guaranty Agreement dated May 4, 2001 in favor of Rewards Network (the "<u>Guaranty</u>");

LA\1747199.1

## AGREEMENT

IN CONSIDERATION for the mutual promises between them, Paragon and Rewards Network hereby agree as follows:

1.    <u>Settlement Actions</u>. In full and complete settlement of all of the parties' claims against each other through and including June 30, 2007, the parties agree to take the following actions:

A.    <u>Payment.</u> Paragon shall collectively pay Rewards Network the total sum of $171,216.35 within five business days of execution of this Settlement Agreement by both parties (the "Settlement Funds"). The amount of the Settlement Funds are arrived at by netting amounts due by Paragon to Rewards Network under the Guest Connect Program through June 30, 2007 ($246,216.35) against the $75,000 that Rewards Network agrees to pay to Paragon to extinguish and to prevent Paragon, the Creditor Trust or the Creditor Trustee under the Plan, or any other person or entity on behalf of Paragon, from filing any claim that Paragon has, may have, or, otherwise, may intend to file with respect to the Action. The Settlement Funds shall be held in Paragon's Williamsburg property escrow until this Settlement Agreement is executed and then wired per Reward Network's wire instructions.

B.    <u>Reimbursement of Legal Fees</u>. Immediately upon receipt of the Settlement Funds, Rewards Network agrees to reimburse Paragon's attorneys at Latham & Watkins the amount of $50,000 for legal fees arising out of and relating to Paragon's relationship with Rewards Network . Accordingly, Rewards Network will receive the net amount of $121,216.53 in satisfaction of Paragon's obligations described herein.

3

LA\747199.1

C.    **Withdrawal of Claims; No Enforcement.** Rewards Network agrees to withdraw and/or not to enforce any claims under the Plan, the Cash Agreement, the Security Agreement, the Guaranty, the Intercreditor Agreement, or any related document.

D.    **Release of Liens.** Rewards Networks agrees to release all liens, deeds of trust and similar interests in Paragon's property granted to it under the Plan as soon as practicable but in no event later than July 31, 2007.

E.    **Return of Uncashed Checks.** Rewards Network agrees to return all uncashed checks relating to the period prior to June 30, 2007, including without limitation, four checks for $6,477.21 each or to credit Paragon for the amounts of such checks.

2.    **Guest Connect Program.** From and after July 1, 2007, Paragon shall continue to participate in and pay amounts due under the Guest Connect Program through January 31, 2008, under the same terms and conditions applicable to its participation in the Guest Connect Program prior to July 1, as set forth in the Plan.   Payments under the Guest Connect program shall be unsecured obligations of Paragon.  The Rewards Network dining credits balance of $99,680.70 as it appears on the weekly Statement Summary of the Guest Connect Program, shall be eliminated.

3.    **Rewards Network's Specific and General Release of Paragon, Steakhouse and the Creditor Trustee/Class 4 Creditor Trust.** Except for the ongoing Paragon obligations described in Paragraph 2 above, in consideration of full payment of the Settlement Funds and other consideration hereunder, Rewards Network, for itself and its successors, predecessors, agents, representatives, and assigns (collectively in this Section 3, "Releasors"), expressly releases, remits, acquits and forever discharges Paragon, Steakhouse the Creditor Trustee and the Class 4 Creditor Trust, and their respective affiliates, associates, professionals, partners, owners,

4

LA\1747199.1

subsidiaries, shareholders, successors, predecessors, assigns, past, present and future directors,

officers, agents, members, attorneys, employees, and all persons acting by, through, under or in

concert with any of them (collectively in this Section 3, the "Releasees") of and from any and all

liability, claims, demands, actions, suits, and causes of action, and obligations arising under or

relating to, without limitation, the Plan, the Cash Agreement, the Security Agreement, the

Intercreditor Agreement, and the Guaranty, and for any and all acts, contracts, omissions, debts,

accounts, damages, costs (including, without limitation, attorney's fees), losses, and expenses of

every type, character, kind, nature or description, whether known or unknown, choate or

inchoate, suspected or claimed of any matter, cause or thing existing at any time on or before

June 30, 2007, which the Releasors had, may have, or hereafter claim to have, against the

Releasees.

 3.1 <u>Waiver of Rights under Civil Code § 1542</u>

 REWARDS NETWORK ACKNOWLEDGES THAT IT HAS BEEN

ADVISED BY LEGAL COUNSEL AND IS FAMILIAR WITH THE PROVISIONS OF

CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES AS FOLLOWS:

 "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH

 THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS

 FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF

 KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS

 SETTLEMENT WITH THE DEBTOR."

REWARDS NETWORK, BEING AWARE OF SUCH CODE SECTION, HEREBY

EXPRESSLY WAIVES ANY RIGHTS IT MAY HAVE THEREUNDER, AS WELL AS

UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR

5

LA\1747199.1

EFFECT. REWARDS NETWORK FURTHER ACKNOWLEDGES THAT IT MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH IT NOW KNOWS OR BELIEVES TO BE TRUE WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT AND THE CLAIMS BEING RELEASED BY IT PURSUANT TO THIS AGREEMENT, BUT THAT NOTWITHSTANDING THE FOREGOING, IT IS REWARD NETWORKS' INTENTION HEREBY TO FULLY, COMPLETELY AND FOREVER SETTLE AND RELEASES EACH AND EVERY ONE OF ITS CLAIMS, AND THAT IN FURTHERANCE OF SUCH INTENTION, THE RELEASES HEREIN GIVEN BY IT SHALL BE AND REMAIN IN EFFECT AS FULL AND COMPLETE RELEASES OF ALL OF ITS CLAIMS NOTWITHSTANDING THE DISCOVERY OR EXISTENCE OF ANY SUCH DIFFERENT OR ADDITIONAL FACTS.

4. **No Bankruptcy Approval.** Paragon, Steakhouse, and the Creditor Trustee represent that this Settlement Agreement does not require approval from the Bankruptcy Court.

5. **Paragon's, Steakhouse's, and the Creditor Trustee's/Class 4 Creditor Trust Release of Rewards Network.** Except for the ongoing obligations of Rewards Network arising out of Paragon's continued participation in the Guest Program described in Paragraph 2 above, in consideration of the payments and consideration hereunder, Paragon, Steakhouse the Creditor Trustee, and the Class 4 Creditor Trust hereby expressly release, remit, acquit and forever discharge the Rewards Network, and its affiliates, associates, partners, owners, subsidiaries, shareholders, successors, predecessors, assigns, past, present and future directors, officers, agents, members, attorneys, employees, and all persons acting by, through, under or in concert with any of them of and from any and all liability, claims, demands, actions, suits, and causes of

6

LA11747199.1

action, and obligations arising under or relating to , without limitation, the Plan, the Cash

Agreement, the Security Agreement, the Guaranty, the Intercreditor Agreement, and for any and

all acts, contracts, omissions, debts, accounts, damages, costs (including, without limitation,

attorney's fees), losses, and expenses of every type, character, kind, nature or description,

whether known or unknown, choate or inchoate, suspected or claimed of any matter, cause or

thing existing at any time on or before June 30, 2007, including  but not limited to any claim that

Paragon, Steakhouse, the Creditor Trust or Creditor Trustee, on anyone acting on their behalf or

through any of them could  assert against Rewards Network in connection with the Action and

the settlement thereof.

     5.1     Waiver of Rights Under Civil Code § 1542

       PARAGON, STEAKHOUSE, AND THE CREDITOR TRUSTEE

ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY LEGAL COUNSEL AND

ARE FAMILIAR WITH THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION

1542, WHICH PROVIDES AS FOLLOWS:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
> THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS
> SETTLEMENT WITH THE DEBTOR."

PARAGON AND STEAKHOUSE, BEING AWARE OF SUCH CODE SECTION,

HEREBY EXPRESSLY WAIVE ANY RIGHTS THEY MAY HAVE THEREUNDER, AS

WELL AS UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF

SIMILAR EFFECT.   FURTHER PARAGON AND STEAKHOUSE ACKNOWLEDGE

LA\1747199.1

THAT THEY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH THEY NOW KNOW OR BELIEVE TO BE TRUE WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT AND THE CLAIMS BEING RELEASED BY THEM PURSUANT TO THIS AGREEMENT, BUT THAT NOTWITHSTANDING THE FOREGOING, IT IS PARAGON'S AND STEAKHOUSE'S INTENTION HEREBY TO FULLY, COMPLETELY AND FOREVER SETTLE AND RELEASES EACH AND EVERY ONE OF THEIR CLAIMS, AND THAT IN FURTHERANCE OF SUCH INTENTION, THE RELEASES HEREIN GIVEN BY THEM SHALL BE AND REMAIN IN EFFECT AS FULL AND COMPLETE RELEASES OF ALL OF ITS CLAIMS NOTWITHSTANDING THE DISCOVERY OR EXISTENCE OF ANY SUCH DIFFERENT OR ADDITIONAL FACTS.

      6.    <u>No Admission of Liability</u>. The Settlement Agreement and/or the execution or performance of any of its terms shall not constitute or be construed as an admission of any liability or wrongdoing whatsoever on the part of any party.

      7.    <u>Amendments in Writing</u>. Any amendment to this Settlement Agreement must be in writing and signed by a duly authorized representative of each party.

      8.    <u>Authorization</u>. By execution of this document, the parties hereto represent and warrant that they are duly authorized to enter into this Settlement Agreement.

      9.    <u>Attorneys' Fees/Choice of Law</u>. If any party initiates any litigation to enforce any of the provisions of this Settlement Agreement, the prevailing party shall be entitled to all of its reasonable attorneys' fees and costs as set by the Court. This Settlement Agreement shall be construed in accordance with, and all disputes hereunder shall be governed by, the laws

8

of the State of California.  The parties all agree to submit to venue in state or federal court in the

Central District of California.

      10.    <u>Counterparts</u>.  This Settlement Agreement may be executed by facsimile

and in one or more counterparts, all of which taken together shall be deemed on original.

      11.    <u>Binding Effect</u>.  The provisions of this Settlement Agreement shall inure

to the benefit of and be binding upon each of the parties, and each of their partners, predecessors,

assigns, agents, directors, officers, employees, representatives, lawyers, subsidiaries and all

persons acting by, through, under or in concert with them or any of them.

      12.    <u>Entire Agreement</u>.  This Settlement Agreement represents the sole and

entire agreement between the parties and supersedes all prior promises and agreements of any

kind, as well as all negotiations and discussions between and among the parties hereto and/or

their respective legal counsel with respect to the subject matter covered hereby.

      13.    <u>Notices</u>.  Unless otherwise provided for in this Agreement, all notices, consents

and other communications between the parties shall be in writing and shall be sent to the following

addresses (or to such other address as may be provided to the other party in accordance with this

Section) by (i) certified mail, return receipt requested (ii) electronic facsimile transmission, or (iii)

overnight courier service, or (iv) messenger, and shall be deemed given upon receipt:


If to Rewards Network:

Richard L. Sandler
Rewards Network Establishment Services Inc.
2 North Riverside Plaza, Suite 950
Chicago, IL 60606
Tel: (312) 521-6785
Facsimile: (312) 521-6761
Email: dsandler@rewardsnetwork.com

If to Paragon and/or Steakhouse:

Susan Schulze-Claasen
Paragon Steakhouse Restaurants, Inc.
10200 Willow Creek Road
San Diego, CA 92131
Tel: (858) 635-3849
Facsimile: (858) 689-0433
Email: sschulze@paragonsteak.com

9

LA\1 747199.1

*Signed by Judge James W. Meyers December 19, 2008*

With copy to:

R. Douglas Rees
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel: (312) 923-2837
Facsimile: (312) 840-7237
Email: drees@jenner.com

If to Creditor Trustee:

T. Scott Avila
Corporate Revitalization Partners, LLC
11400 West Olympic Boulevard
Suite 269
Los Angeles, CA 90064
Tel: (310) 309-4746
Facsimile: (310) 919-3751
Email: savila@crpllc.net

With copy to:

Sharon Z. Weiss
Weinstein, Weiss & Ordubegian LLP
1925 Century Park East
Suite 1150
Los Angeles, CA 90067
Tel: (310) 203-9393
Facsimile: (310) 203-8110
Email: sweiss@wwolawyers.com

With copy to:

Peter M. Gilhuly
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071
Tel: (213) 891-8720
Facsimile: (213) 891-8763
Email: peter.gilhuly@lw.com

14.    <u>Construction.</u> Each party hereto acknowledges that it has been

represented in negotiations for, and in the preparation of this Settlement Agreement by counsel

of that party's choosing, and in that each party has read this Settlement Agreement and has had it

fully explained by that party's counsel, and is fully aware of the contents and legal effect of this

Settlement Agreement and is not entering into this Settlement Agreement based upon any

10

Signed by Judge James W. Meyers December 19, 2008

representation or warranty of any other party hereto unless such representation and warranty is set forth herein. The language of this Settlement Agreement shall be construed as a whole according to its fair meaning and not strictly for or against any of the parties.

15. <u>Representation by Counsel</u>. Each party hereto represents and warrants that: (a) it has carefully read this Agreement and knows and understands its contents; and (b) it has received the advice of independent legal counsel of its own choosing in connection with this Agreement, including the claims and disputes resolved and released herein, and the signing of this Agreement.

16. <u>Further Documents and Information Needed to Implement Agreement</u>. Each party hereto agrees to execute and deliver any and all further documents and instruments, and shall do all acts and provide such information, as any party may reasonably request, which may be necessary or appropriate to fully implement the provisions of this Agreement.

LA\1747199.1

IN WITNESS WHEREOF, the parties hereto have executed this Agreement and made

it effective as of the dates set forth below.

DATED: July 11, 2007      REWARDS NETWORK ESTABLISHMENT SERVICES
INC., formerly known as IDINE RESTAURANT GROUP
INC.

By _____

Name: _Christopher J. Locke_____

Its: _CFO_____

12

LA1747199.1

DATED: July ___, 2007          PARAGON STEAKHOUSE RESTAURANTS, INC., a
                               Delaware corporation

                               By _____
                               Name: _____
                               Its: _____

DATED: July ___, 2007          STEAKHOUSE PARTNERS, INC., a Delaware
                               corporation

                               By _____
                               Name: _____
                               Its: _____

DATED: July ___, 2007          CREDITOR TRUSTEE

                               By _____
                               Name:   T. Scott Avila


APPROVED AS TO FORM:

JENNER & BLOCK LLP

By: _____
    R. Douglas Rees., Attorney for
Rewards Network Establishment Services Inc.


LATHAM & WATKINS LLP


By: _____
    Peter M. Gilhuly, Attorney for Paragon
Steakhouse Restaurants, Inc. and Paragon Steakhouse Restaurants, Inc.


13

LA\1747199.1

DATED: July 11, 2007          PARAGON STEAKHOUSE RESTAURANTS, INC., a
                              Delaware corporation

                              By _____
                              Name: _Susan Schulze-Claasen_
                              Its: _President & General Counsel_

DATED: July 11, 2007          STEAKHOUSE PARTNERS, INC., a Delaware
                              corporation

                              By _____
                              Name: _Susan Schulze-Claasen_
                              Its: _EVP & General Council_

DATED: July __, 2007          CREDITOR TRUSTEE

                              By _____
                              Name:  T. Scott Avila


APPROVED AS TO FORM:

JENNER & BLOCK LLP


By: _____
    R. Douglas Rees., Attorney for
Rewards Network Establishment Services Inc.


LATHAM & WATKINS LLP

By: _Peter M. Gilhuly_____
    Peter M. Gilhuly, Attorney for Paragon
Steakhouse Restaurants, Inc. and Paragon Steakhouse Restaurants, Inc.


13

Signed by Judge James W. Meyers December 19, 2008

DATED: July ___, 2007      PARAGON STEAKHOUSE RESTAURANTS, INC., a
Delaware corporation

By _____
Name: _____
Its: _____

DATED: July ___, 2007      STEAKHOUSE PARTNERS, INC., a Delaware
corporation

By _____
Name: _____
Its: _____

DATED: July ___, 2007      CREDITOR TRUSTEE

By _____
Name:    T. Scott Avila

APPROVED AS TO FORM:

JENNER & BLOCK LLP

By: _____
R. Douglas Rees., Attorney for
Rewards Network Establishment Services Inc.

LATHAM & WATKINS LLP

By: _____
Peter M. Gilhuly, Attorney for Paragon
Steakhouse Restaurants, Inc. and Paragon Steakhouse Restaurants, Inc.

13

LA\1747109.1