1  Ali M.M. Mojdehi, State Bar No. 123846
   Brian W. Byun, State Bar No. 264506
2  **BAKER & McKENZIE LLP**
   12544 High Bluff Drive, Third Floor
3  San Diego, CA  92130-3051
   Telephone:    +1 858 523 6200
4  Facsimile:    +1 858 259 8290

5  Counsel for Official Committee of Unsecured
   Creditors

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  In re                              | Case No.  08-04147-JM11

11  STEAKHOUSE PARTNERS, INC., a Delaware | Chapter 11
    Corporation,
12                                       | (Jointly Administered with
                        Debtor.          | Case Nos. 08-04152 JM11 and
13                                       | 08-04153 JM11)

14  In re                              | **FIRST AND FINAL APPLICATION
                                        | FOR COMPENSATION OF FEES AND
15  PARAGON STEAKHOUSE RESTAURANTS,     | REIMBURSEMENT OF EXPENSES
    INC., a Delaware Corporation,       | (AND FINAL ALLOWANCE OF
16                                       | SAME) OF BAKER & McKENZIE
                        Debtor.          | LLP, COUNSEL FOR OFFICIAL
17                                       | COMMITTEE OF UNSECURED
                                        | CREDITORS FOR PERIOD FROM
18  In re                              | JUNE 24, 2008 THROUGH
                                        | NOVEMBER 8, 2010**
19  PARAGON OF MICHIGAN, INC., a        |
    Wisconsin Corporation,              | Date:     July 29, 2011
20                                       | Time:     10:00 a.m.
                        Debtor.          | Ctrm:     5
21                                       | Judge:    Hon. James W. Meyers

22

23

24

25

26

27

28

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/711574.6

CASE NO. 08-04147-JM11
BAKER & McKENZIE LLP'S FIRST AND FINAL FEE APPLICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................... 3

II.     BACKGROUND ................................................................................................ 3

III.    BAKER & McKENZIE'S RETENTION ............................................................ 4

IV.     REQUEST FOR APPROVAL AND PAYMENT OF ALL FEES AND EXPENSES FOR
        THE APPLICATION PERIOD .......................................................................... 5

V.      SERVICES RENDERED BY BAKER & McKENZIE DURING APPLICATION
        PERIOD ............................................................................................................ 7

        A.    Case Administration – 1001............................................................... 7
        B.    Fee/Employment Applications – 1002 ............................................... 9
        C.    Claims Administration – 1004 ........................................................... 9
        D.    Committee Communications and Meetings – 1005........................... 9
        E.    Sale of Assets – 1006 ...................................................................... 10
        F.    Analysis and Recovery of Estate Claims – 1007 ............................ 10
        G.    Litigation – 1008 .............................................................................. 12

VI.     EVALUATING STANDARDS......................................................................... 12

VII.    APPLICATION OF THE LODESTAR AND THE APPLICABLE *JOHNSON* FACTORS
        TO THE PRESENT CASE.............................................................................. 14

        A.    Time Spent........................................................................................ 14
        B.    The Attorneys of Baker & McKenzie Have Exercised a High Degree of Skill in
              Performing the Required Services. .................................................. 15
        C.    The Rates Charged........................................................................... 16
        D.    Whether the Fee is Contingent........................................................ 16
        E.    The Services Were Necessary and Beneficial to the Estate............ 17
        F.    Customary Fee for Comparable Services. ....................................... 18
        G.    The Experience, Reputation and Ability of the Attorneys Involved. ............... 18

VIII.   CONCLUSION................................................................................................ 19

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

i

SDODMS1/711574.6

CASE NO. 08-04147-JM11
BAKER & McKENZIE LLP'S FIRST AND FINAL FEE APPLICATION

1

2

**TABLE OF AUTHORITIES**

3

**FEDERAL CASES**

*In re Busy Beaver Bldg. Ctrs., Inc.*,
    19 F.3d 833 (3d Cir. 1994)........................................................................9

*In re Channel Master Holdings, Inc.*,
    309 B.R. 855 (Bankr. D. Del. 2004) ..........................................................10

*Cunningham v. County of L.A.*,
    879 F.2d 481 (9th Cir. 1988) ....................................................................6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).................................................................................6

*In re Acme Cake Co.*,
    2010 Bankr. LEXIS 3689 (Bankr. E.D.N.Y. Oct. 18, 2010) ......................10

*Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*,
    468 F.3d 592 (9th Cir. 2006) ....................................................................6

*In re Nucorp Energy, Inc.*,
    764 F.2d 655 (9th Cir. 1985) ....................................................................5

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986).................................................................................7

*United States Trustee v. Knudsen Corp. (In re Knudsen Corp.)*,
    84 B.R. 668 (B.A.P. 9th Cir. 1988)...........................................................5

*In re Westec Corp.*,
    313 F.Supp. 1296 (S.D. Tex. 1970) ..........................................................8

*Yermakov v. Fitzsimmons (In re Yermakov)*,
    718 F.2d 1465 (9th Cir. 1983) ..................................................................6

**FEDERAL RULES AND STATUTES**

11 U.S.C. § 330................................................................................ passim

Fed. R. Bankr. Proc. Rule 2004 .................................................................4

Fed. R. Bankr. Proc. Rule 2016 .................................................................2

**TREATISES**

23 COLLIERS ON BANKRUPTCY, (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2002) ...8, 11

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

ii

1  TO THE HONORABLE JAMES W. MEYERS, UNITED STATES BANKRUPTCY

2  JUDGE; OFFICE OF THE UNITED STATES TRUSTEE; JAMES L. KENNEDY, CHAPTER 7

3  TRUSTEE, AND HIS COUNSEL OF RECORD; THE DEBTOR; AND ALL OTHER

4  INTERESTED PARTIES:

5         Baker & McKenzie LLP ("Baker & McKenzie"), counsel to the Official Committee of

6  Unsecured Creditors, (the "Committee") of the bankruptcy estates of Steakhouse Partners, Inc.

7  ("Steakhouse"), Paragon Steakhouse Restaurants, Inc. ("Paragon") and Paragon of Michigan, Inc.

8  ("Paragon of Michigan" and together with Steakhouse and Paragon, the "Debtors"), hereby submits,

9  pursuant to sections 330 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016

10  of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); Rule 2016-3 of the Local

11  Rules of the United States Bankruptcy Court for the Southern District of California (the "Local

12  Bankruptcy Rules"); Guideline No. 4 of the Guidelines for Fulfilling the Requirements of the United

13  States Trustee issued by the United States Trustee for the Southern District of California (rev. Jan. 1,

14  2008) (the "Local UST Guidelines"); and the Guidelines for Reviewing Applications for

15  Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, promulgated by the

16  Executive Office for the Office of the United States Trustee (the "UST Fee Application

17  Guidelines"), its First and Final Application for Compensation of Fees and Reimbursement of

18  Expenses (and Final Allowance of Same) (the "Application") for services rendered consisting of fees

19  in the amount of $335,397.15 and expenses in the amount of $1,454.21 for a total amount of

20  $336,851.36, for the period June 24, 2008 through November 8, 2010 (the "Application Period").

21  This amount includes: (1) $18,000 received from the Debtor in December 2008, pursuant to the

22  Order Approving Cash Collateral Stipulation (defined below), (2) $6,500.00 in fees incurred in

23  connection with the preparation of this Application; and (3) a voluntary reduction of $37,266.35 or

24  10% of actual fees billed.  In support of the Application, Baker & McKenzie files concurrently

25  herewith the declaration of Ali M.M. Mojdehi (the "Mojdehi Declaration") and respectfully

26  represents as follows:

27  / / /

28  / / /

# I.     INTRODUCTION

These Bankruptcy Cases[1] presented certain challenges by simple virtue of when they were initiated and administered – *i.e.*, in the midst of a recession that hit the restaurant industry particularly hard.[2]  In this challenging economic climate, Baker & McKenzie worked diligently to do what it could to maximize value for the estate and unsecured creditors – *e.g.*, working with the Debtors and the Secured Creditor Trust on the "front end" on sales of the Debtors' assets and on the "back end," investigating the D&O Claims and ultimately filing the D&O Action.

This Application provides detail – both in narrative and individual time entry format – on the time spent by Baker & McKenzie on these and other tasks related to the smooth and efficient administration of these Bankruptcy Cases during their Chapter 11 phase.  While these Bankruptcy Cases did not result in a plan or structured dismissal, but rather in a conversion to Chapter 7, such result should not be factored as a demerit when analyzing the reasonableness of Baker & McKenzie's fees and expenses, because the Bankruptcy Code uses an objective standard that does not rely on hindsight.

Baker & McKenzie asserts that its fees and expenses, as set forth in the Application, are reasonable (especially in light of the 10% voluntary reduction to its fees) and prays that this Court will grant the Application in full.

# II.     BACKGROUND

On May 15, 2008 (the "Petition Date"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (together, the "Bankruptcy Cases") in the United States Bankruptcy Court for the Southern District of California (the "Court").  On May 28, 2008, the Court entered an order consolidating the Bankruptcy Cases for administration purposes only under the lead case number 08-04147.  *See* Doc. No. 37.  The Debtors are related corporations which were engaged in the operation of 19 full-service steakhouse restaurants located in Arizona, California, Indiana, Michigan, North Carolina, Ohio and Utah under

---

[1] All capitalized terms used in this "Introduction" are defined below.
[2] *See, e.g.*, Andrew Martin, *Empty Tables Threaten Some Restaurant Chains*, N.Y. TIMES, Apr. 3, 2009, available at http://www.nytimes.com/2009/04/04/business/04restaurant.html (citing, *inter alia*, Outback Steakhouse as one struggling chain).

the brand names Hungry Hunter, Hunter Steakhouse, Mountain Jack's and Carvers (collectively, the "Restaurants"). Steakhouse was publicly traded over the counter under the symbol "STKP." In December 1998, Steakhouse acquired its wholly owned subsidiary, Paragon, which owned and operated the Restaurants. Paragon has one wholly owned subsidiary, Paragon of Michigan, through which it conducted its restaurant operations in the state of Michigan and held its intellectual property and trade names. The structural maintenance of Paragon of Michigan is dictated by state alcohol laws; however, the subsidiary operations and financial results are consolidated at the Paragon level.

On June 12, 2008, the Office of the United States Trustee (the "U.S. Trustee") formed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. On that date, the U.S. Trustee appointed The Restaurant Management Group, Central Meat and Provision, Inc., and Tippecanoe Place, LLC as members of the Committee. On June 19, 2008, the U.S. Trustee also appointed Southwest Traders, Inc. and Marvin T. Levin to the Committee.

On November 8, 2010, the Court converted the Bankruptcy Cases from Chapter 11 to Chapter 7 (the "Conversion"), and the Committee was dissolved. James L. Kennedy was appointed the Chapter 7 Trustee (the "Chapter 7 Trustee") for the Debtors' estates. *See* Doc. No. 650.

On March 1, 2011, the Court entered an order setting May 31, 2011 as the deadline for creditors to file Chapter 11 administrative expense claims in the Bankruptcy Cases. *See* Doc. No. 696.

### III.    BAKER & McKENZIE'S RETENTION

On June 24, 2008, shortly after its formation, the Committee sought to retain Baker & McKenzie as counsel and Corporate Recovery Associates ("CRA") as its financial advisor. On July 11, 2008, the Committee sought an order authorizing the employment of Baker & McKenzie as its counsel, *nunc pro tunc* to June 24, 2008, pursuant to the applicable provisions of the Bankruptcy Code [Doc. No. 159] (the "Retention Application"). The Committee selected Baker & McKenzie because of its extensive experience and knowledge in the field of bankruptcy, insolvency and distressed situations. On July 25, 2008, the Court entered an order approving the employment of Baker & McKenzie, *nunc pro tunc* to June 24, 2008, pursuant to sections 1103(a) and 330 of the Bankruptcy Code [Doc. No. 189] (the "Retention Order"). A true and correct copy of the Retention

Order is attached to the Mojdehi Declaration as **Exhibit "1."**

This is Baker & McKenzie's first and final fee application. Baker & McKenzie has received no retainer in connection with its engagement by the Committee.

The Court approved the terms of Baker & McKenzie's employment, including (i) the payment of Baker & McKenzie's legal fees and related costs as administrative expenses pursuant to sections 330, 331, 503(b) and 1103 of the Bankruptcy Code; (ii) telephone and telecopier and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, travel expenses, expenses for working meals or overtime/after-hours meals, computerized research and transcript costs – all charged to the Committee at rates consistent with charges made to other Baker & McKenzie clients; (iii) the hourly rates for the two principal attorneys representing the Committee on this matter, Mr. Ali M.M. Mojdehi ($575 per hour) and Ms. Christine E. Baur ($500 per hour); and (iv) Baker & McKenzie's customary hourly rates for its attorneys and paraprofessionals, which are as follows:

| | |
|---|---|
| Partners | $450 - $850 |
| Associates | $265 - $500 |
| Paralegals | $195 - $250 |

Since filing the Retention Application, Mr. Mojdehi's customary hourly rate has increased to $650, which is within the range of hourly rates for partners at similar national and international law firms.

## IV.    REQUEST FOR APPROVAL AND PAYMENT
## OF ALL FEES AND EXPENSES FOR THE APPLICATION PERIOD

With this Application, Baker & McKenzie is requesting final allowance and payment of fees in the amount of $335,397.15 consisting of 822.8 hours of billed time. Included in this fee amount is $18,000 received on or about December 22, 2008 (the "Received Amount").[3] Baker & McKenzie requests final allowance of the Received Amount. Also included in this fee amount is $6,500 as an

---

[3] Pursuant to that certain "Order Approving Motion to Approve the Stipulation Among the Debtors in Possession and Secured Creditors T. Scott Avila, Creditor Trustee of the Class IV Creditor Trust Re: Use of Cash Collateral" [Doc. No. 444; Dec. 19, 2008] ("Order Approving Cash Collateral Stipulation"), the Debtors were authorized to pay $25,000 to the professionals retained by the Committee. Baker & McKenzie received the full $25,000 and divided it *pro rata* with CRA for fees and expenses incurred from retention to November 30, 2008. *See* Mojdehi Decl., ¶ 5.

1   approximate amount incurred for preparation of this Application. Baker & McKenzie also requests

2   final allowance and payment of $1,454.21 for expenses incurred over the Application Period. In an

3   exercise of billing judgment, Baker & McKenzie has written off 10% of its total fees in the amount

4   of $37,266.35.

5       A full description of the services provided (including preparation of this Application),

6   containing a listing of the attorneys and paraprofessionals who devoted time to each matter during

7   the Application Period, along with their billing rates, total hours and total fees billed, is attached as

8   **Exhibit "2"** to the Mojdehi Declaration. This exhibit shows the date the services were rendered, the

9   nature of the services rendered, who rendered the services, the time required for the performance of

10  such services, and the fee associated with each service rendered. All services performed by Baker &

11  McKenzie's professionals were recorded in time increments of one-tenth (0.10) of an hour. All

12  services performed by Baker & McKenzie's paralegals, legal assistants and professional staff were

13  professional in nature and, if not performed by the paraprofessionals, would have been performed by

14  attorneys.

15      Summaries of the expenses, which include all out-of-pocket expenses incurred by Baker &

16  McKenzie for all matters on behalf of the Committee during the Application Period, are also

17  contained in Exhibit "2." Expenses for court costs, outside copy costs, computerized legal research,

18  long distance telephone use, express delivery, travel, and courier services are billed at actual cost.

19  In-house copy charges are billed at $.19 per page. Baker & McKenzie does not charge for incoming

20  faxes. The use of email has been significant in this case, which has greatly reduced the cost of

21  telecopies and long distance telephone use. Courier and overnight services and telecopies were

22  necessary when regular mail would not be adequate to complete the task in a timely manner.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Baker & McKenzie LLP
San Diego

6

1

## V.    SERVICES RENDERED BY BAKER & McKENZIE DURING APPLICATION PERIOD

Pursuant to Local Bankruptcy Rule 2016-2(b), the following chart substantially conforms to Local Form CSD 1143:

| CATEGORIES (Matter Name and Number) | FIRST AND FINAL PERIOD JUNE 24, 2008 to NOV. 8, 2010 | |
|---|---|---|
| | Number of Billed Hours | Fees Requested |
| 1001 – Case Administration | 251.7 | $116,722.00 |
| 1002 – Fee/Employment Applications | 22.6 | $9,189.50 |
| 1003 – Plan and Disclosure Statement | 0.0 | 0.00 |
| 1004 – Claims Administration | 12.1 | $4,244.00 |
| 1005 – Committee Communications and Meetings | 49.2 | $25,518.00 |
| 1006 – Sale of Assets | 146.0 | $71,791.00 |
| 1007 – Analysis and Recovery of Estate Claims | 309.8 | $126,375.50 |
| 1008 – Litigation | 31.4 | $12,323.50 |
| 1009 – Tax | 0.0 | 0.00 |
| **SUBTOTAL** | **822.8** | **$366,163.50** |
| Fees for First & Final Fee Application | | $6,500.00 |
| 10% write-off of fees | | ($37,266.35) |
| **TOTAL** | | **$335,397.15** |

Set out below is a narrative explanation, broken down by matter, of the services performed by Baker & McKenzie during the Application Period. No narrative is provided for those matters where no fees were incurred during the Application Period.

A.    **Case Administration – 1001**

**Hours Expended:**    251.7

**Fees Requested:**    **$116,672.00**

Services rendered under this category relate to time incurred mainly in connection with the status and progress of the Bankruptcy Cases. At the beginning of the Bankruptcy Cases, this entailed working with the Class IV Creditor Trust (the "Secured Creditor Trust")[4] and the Debtors

---

[4] The Secured Creditor Trust provides this description of its own origination: "The Debtors filed previous chapter 11

Baker & McKenzie LLP
San Diego

on various issues to make the rest of the Bankruptcy Cases operate smoothly, including with respect to insider compensation, use of cash collateral and sale of the Debtors' assets. Where necessary, Baker & McKenzie drafted and filed objections to the Debtors' requests. *See*, *e.g.*, Doc. No. 156 [Committee's limited objection to Debtors' request for insider compensation]. During the early stages of the Bankruptcy Cases, Baker & McKenzie also conducted research on the advisability of installing a chief restructuring officer to take over the Debtors' operations and sale efforts.

Towards the latter end of the chapter 11 portion of the Bankruptcy Cases, case administration was devoted mainly to negotiations for global resolution of the Bankruptcy Cases with the Debtors and the Secured Creditor Trust, by resolving that certain adversary proceeding initiated by the Debtors against the Secured Creditor Trust for surcharge of certain administrative expenses (Adv. Proc. No. 09-90163) (the "Adversary Proceeding"). With respect to the potential global resolution of both the Adversary Proceeding and the Bankruptcy Cases generally (the "Global Resolution"), Baker & McKenzie upheld its fiduciary responsibility to creditors by conducting factual and legal due diligence regarding potential avoidance actions against the Secured Creditor Trust. Once those duties were fulfilled, Baker & McKenzie worked diligently to finalize the Global Resoultion with the Debtors and the Secured Creditor Trust, file it with the Court and address – in consultation with the Debtors and Secured Creditor Trust – objections to the agreement filed by, among others, the Internal Revenue Service. Due to the Conversion, of course, the Global Resolution was never consummated.[5]

Baker & McKenzie has closely monitored the status of the Bankruptcy Cases and worked in tandem with CRA to review and analyze financial information, pleadings and communications with respect to, among other things, the Debtors' proposed sales of assets, creditors' claims for

---

bankruptcy petitions in early 2002. Effective December 31, 2003, the Debtors confirmed a Joint Plan of Reorganization (the 'Plan') which provided for the creation of the [Secured Creditor] Trust for all general unsecured claimants with claims greater than $4,000 in the first cases. The [Secured Creditor] Trustee was charged with collecting, maintaining and distributing the assets of the [Secured Creditor] Trust, including an immediate payment of $1,000,000 and periodic payments under the Class 4 Note (the "Note") in the principal amount of $5,030,000, which were to pay the claimants dividends of at least 90%. The Note was secured by the Class 4 Creditor Note Security Documents, which consisted of the Class 4 Security Agreement and twenty-five leasehold mortgages (the 'Leasehold Mortgages')." *See* Doc. No. 674 at 2, lines 8-16 [footnote omitted].

[5] As explained below, this failure by the parties to consummate the Global Resolution is not a factor in approving or disapproving this, or any other estate professional's, Application.

Baker & McKenzie LLP
San Diego

CASE NO. 08-04147-JM11
BAKER & McKENZIE LLP'S FIRST AND FINAL FEE APPLICATION

SDODMS1/711574.6

administrative expenses, creditors' requests for relief from stay and resolution of the Adversary

Proceeding – all with a strategic eye towards maximizing value for unsecured creditors.

Also contained in this category are regular internal communications as well as

communications with the Debtors and other creditors, including the Secured Creditor Trust, on

general case issues.

**B.       Fee/Employment Applications – 1002**

> **Hours Expended:     22.6**

> **Fees Requested:     $9,189.50**

Time under this category relates to preparation and filing of Baker & McKenzie's

employment applicaton and supporting documents, as well as CRA's employment application,

including correspondence with the U.S. Trustee regarding its statements of position on Baker &

McKenzie's and CRA's retention.  Time was also spent in this category on beginning the drafting of

a first fee application by Baker & McKenzie, which, though not filed, has been incorporated into this

Application.  In addition, Baker & McKenzie has included in this Application approximate fees of

$6,500 for time spent preparing this Application.[6]

**C.       Claims Administration – 1004**

> **Hours Expended:     12.1**

> **Fees Requested:     $4,244.00**

This category captures time spent by Baker & McKenzie, in consultation with CRA, on

analysis of claims by various administrative creditors, the Secured Creditor Trust and certain taxing

authorities.  Time was also spent in this category with respect to extending the Debtors' time to file

preference and other avoidance actions in these Bankruptcy Cases.

**D.       Committee Communications and Meetings – 1005**

> **Hours Expended:     49.2**

> **Fees Requested:     $25,518.00**

Prior to the Conversion, Baker & McKenzie communicated with Committee members about

various aspects of the Bankruptcy Cases – whether in the form of conference calls or e-mail

---

[6] See, end of Exhibit "2".

correspondence.  This project category contains time spent by Baker & McKenzie (i) preparing for those Committee conference calls; (ii) responding to Committee members' inquiries; (iii) recommending case strategies going forward, including with respect to litigation against the Debtors' directors and officers; and (iv) providing case updates.

Baker & McKenzie also facilitated communications between CRA and the Committee, with respect to various financial analyses provided by CRA.

**E.     Sale of Assets – 1006**

**Hours Expended:     146.0**

**Fees Requested:     $71,791.00**

Baker & McKenzie has included in this category all time related to the Committee's participation in the process of liquidating all of the Debtors' assets (*e.g.*, restaurant locations, liquor licenses, FF&E, etc.), including formulating the sale procedures, analyzing leases to be assumed and assigned, coordinating closely with the service provider of the virtual data room as well as Corporate Revitalization Partners ("CRP"), the Debtors' financial advisors and sales consultants with respect to marketing of the Debtors' assets, and, where necessary, drafting and filing an objection to the Debtors' sale motion.  *See* Doc. No. 210.

This project category also includes time spent by Baker & McKenzie extensively consulting with CRA, representatives and counsel for the Debtors and counsel for the Secured Creditor Trust on the strategy and status of the various sales.  Baker & McKenzie closely monitored the sales process, including providing constructive criticism and input to the Debtors regarding the content and traffic in the virtual data room, conducting due diligence on the *bona fides* of any and all prospective purchasers and analyzing the asset purchase agreements and other deal documents proposed by the Debtors, to ensure maximization of value for the benefit of unsecured creditors.

**F.     Analysis and Recovery of Estate Claims – 1007**

**Hours Expended:     309.8**

**Fees Requested:     $126,375.50**

This category is comprised of time spent by Baker & McKenzie analyzing and preparing for prosecution of the estates' claims against the Debtors' officers and directors for, among other causes

of action, breach of fiduciary duty (the "D&O Claims").  Soon after its retention was approved, Baker & McKenzie began conducting research and due diligence on the soundness, strength of and potential recoverability on the D&O Claims.  On January 15, 2009, Baker & McKenzie tendered a demand letter to the Debtors, requesting authority to pursue the D&O Claims.  When that request proved futile, Baker & McKenzie filed a motion with the Bankruptcy Court on February 6, 2009 for an order delegating to the Committee the sole authority for prosecuting the D&O Claims on behalf of and for the benefit of the estate (the "D&O Claims Motion").  *See* Doc. No. 476.  After notice and hearing, the D&O Claims Delegation Motion was granted, and an order (prepared by Baker & McKenzie) was entered by the Bankruptcy Court on March 25, 2009 (the "D&O Claims Order").  *See* Doc. No. 530.

Nine days after entry of the D&O Claims Order, Baker & McKenzie filed an ex parte application under Federal Rule of Bankruptcy Procedure 2004 for an order compelling the discovery of information and documents of Stone Douglass ("Douglass"), the Debtors' President, Chief Executive Officer and Chairman of the Board and any other person with relevant knowledge (the "2004 Motion").  *See* Doc. No. 537.  The 2004 Motion was unopposed (*see* Doc. No. 550), and the Bankruptcy Court duly entered an order granting the 2004 Motion on April 24, 2009 (*see* Doc. No. 552).

After issuing subpoenas and conferring with separate counsel for the individual directors and officers of the Debtors, in May 2009, Baker & McKenzie was provided access to and reviewed a voluminous amount of the Debtors' corporate documents held in a storage facility in San Diego.  Matthew Allison, a partner in Baker & McKenzie's Chicago office, spearheaded that effort because of his extensive experience and expertise in litigating complex surety claims.  After reviewing these documents and more produced by the Debtors' directors and officers, Baker & McKenzie conducted the deposition of Douglass on June 25, 2009 and thereafter drafted a complaint against the Debtors' directors and officers (the "D&O Complaint").

Immediately prior to the filing of the D&O Complaint on May 14, 2010, Baker & McKenzie spent time identifying and conferring with local firms that would potentially prosecute the D&O Complaint on a contingency-fee basis.

Baker & McKenzie LLP
San Diego

SDODMS1/711574.6

CASE NO. 08-04147-JM11
BAKER & McKENZIE LLP'S FIRST AND FINAL FEE APPLICATION

**G.      Litigation – 1008**

**Hours Expended:      31.4**

**Fees Requested:      $12,323.50**

The majority of the time spent in this category is for worked performed by Baker & McKenzie subsequent to the filing of the D&O Complaint in the Superior Court of California, San Diego County (the "State Court") (Case No. 37-2010-00092172-CU-MC-CTL) (the "D&O Action") on May 14, 2010.

Specifically, Baker & McKenzie spent time in this category conferring with various parties about the D&O Action, including attorneys who could potentially assume prosecution of the D&O Action on a contingency-fee basis.[7]

## VI.      EVALUATING STANDARDS

*Section* 330 of the Bankruptcy Code authorizes compensation for professionals rendering services in connection with a bankruptcy case.  *See*, *e.g.*, *United States Trustee v. Knudsen Corp.* (*In re Knudsen Corp.*), 84 B.R. 668 (B.A.P. 9th Cir. 1988).

The responsibility for determining reasonable compensation under *section* 330 of the Bankruptcy Code for services rendered to the estate rests with the bankruptcy court and the court's decision is final unless there is an abuse of discretion.  *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985).  *Section* 330(1)(a)(1)(A) provides that "reasonable compensation" be awarded "for actual, necessary services."  In determining the amount of reasonable compensation to be awarded, the court is to consider "the nature, the extent, and the value of the services rendered."  In connection therewith, the court is to take into account "all relevant factors," including

A.      the time spent on such services;

B.      the rates charged for such services;

---

[7] The D&O Action is still pending in the State Court.  After the Conversion (and dissolution of the Committee), Baker & McKenzie has passed on responsibility for prosecution of the D&O Action to the Chapter 7 Trustee, who will, by his counsel and in his sound business judgment, either substitute in as the plaintiff in the D&O Action or abandon it.  Due to the pending nature of the D&O Action, certain sensitive information, as well as information protected by the attorney-client privilege, dealing with the Committee's strategy with respect to the D&O Action, has been redacted in Exhibit "2".  Upon request by the Court, the U.S. Trustee and/or the Chapter 7 Trustee, Baker & McKenzie will provide the unredacted version of Exhibit "2".

Baker & McKenzie LLP
San Diego

SDODMS1/711574.6

C.      whether the services were necessary to the administration of or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

D.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

E.      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

F.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Section* 330 otherwise provides that compensation is not allowed for unnecessary duplication of services or services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case.

In the Ninth Circuit, the primary method used to determine a reasonable fee in bankruptcy cases is to calculate the lodestar. *See Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 598 (9th Cir. 2006); *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1471 (9th Cir. 1983).[8]  A court computes the lodestar by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Yermakov*, 718 F.2d at 1471; *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (reasoning that the lodestar "calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services").

Once the lodestar is established, there is a strong presumption that the lodestar figure represents a reasonable fee which should be adjusted only in rare or exceptional cases. *Cunningham v. County of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988).  The Supreme Court explained the basis for this presumption:

> [W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance. In

---

[8] The lodestar approach, however, is not the exclusive method for calculating fees. *Eliapo*, 468 F.3d at 598 (stating that "the lodestar method is not mandatory").

short, the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986).

In this Application, Baker& McKenzie is not seeking any upward adjustment in the "lodestar" approach to its fee request.  The requested fees in this Application are the product of the number of the hours expended by attorneys in representing the interests of the Committee multiplied by their respective hourly rates.  In addition, Baker & McKenzie has not charged for word processing services or secretarial overtime, although the firm bills its non-bankruptcy clients for such items.  Furthermore, Baker has written down approximately $36,000.00 in otherwise compensable fees, in the exercise of its billing judgment.

## VII.    APPLICATION OF THE LODESTAR AND THE APPLICABLE *JOHNSON* FACTORS TO THE PRESENT CASE

### A.    Time Spent.

As noted above, the first element to be considered in determining the reasonableness of compensation under section 330(a)(3)(A) is the amount of time consumed in rendering the services for which compensation is sought.  Section 330(a)(3)(D) requires that a court determine whether the services were performed within a reasonable amount of time based upon the complexity, importance, and nature of the issue.  In this respect, courts have required professionals seeking payment to provide accurate records of the amount of time spent and the manner in which it was spent, based upon detailed, contemporaneous time records that reveal enough information to enable the court to make an informed judgment about specific tasks and the time allotted.

Baker & McKenzie's time records, copies of which are attached hereto as Exhibit "2" and incorporated herein by reference, demonstrate that during the Application Period Baker & McKenzie spent a total of 822.8 hours in representing the Committee.  Baker & McKenzie submits that a review of its time records will disclose that all of the time spent was reasonable and necessary for the adequate representation of the Committee in connection with the matters for which Baker & McKenzie was employed.  The blended hourly rate for services, excluding paralegals and

1   paraprofessionals, is $414.70/hr.

2   **B.    The Attorneys of Baker & McKenzie Have Exercised a High Degree of Skill in
        Performing the Required Services.**

3

4   Part and parcel of the analysis of the quantity of time spent is also the quality of services

5   provided.  Indeed, many courts recognize that a strict adherence to time alone, without consideration

6   of other factors, would not be fair.  *See, e.g., In re Westec Corp.*, 313 F.Supp. 1296 (S.D. Tex. 1970).

7   As stated in *Collier on Bankruptcy*:

8           [a]lthough the number of hours fairly and properly devoted to a case
            may aid the court in arriving at a reasonable compensation, it should
9           not serve as one of the predominant considerations.  Undue emphasis
            on the factor of the "time spent" fails to acknowledge the fact that skill
10          and experience may accomplish much in a short period of time. …
            Focus on the hours expended by a professional also may ignore the
11          fact that some services are routine and ordinary while others involve
            complex and difficult issues.
12

13  3 A. Resnick & H. Sommer, eds., Collier on Bankruptcy, ¶ 330.04[4][d] (15th ed. rev. 2002).

14  Throughout the Application Period, there were multiple critical aspects of the case that

15  required significant attention, including consummation of the various sales of the Debtors' assets and

16  extensive negotiations with the Debtors and the Secured Creditor Trust of the Global Resolution; in-

17  depth discovery, legal and factual research and briefing with respect to the D&O Action, which was

18  and remains property of the estates unencumbered by the Secured Creditor Trust's lien; and motion

19  practice and all preparatory activities incidental to all of the foregoing matters.

20  Additionally, Baker & McKenzie actively communicated and strategized with CRA and the

21  Committee in an effort to effectively respond to all aspects of these Bankruptcy Cases in a manner

22  designed to enhance recovery of estate assets and maximization of value.[9]

23  Baker & McKenzie has continued to draw on its experience and competency in resolving

24  complex issues and deftly handling numerous developments during the span of its engagement.

25  Baker & McKenzie has used discretion, good judgment and worked efficiently to handle the issues

26  that have arisen in this case.

27

28  ───────────────
    [9] As discussed in more detail below under the subheading "Results Obtained," the Conversion is not a factor the Court
    should use to analyze the reasonableness of this Application.

Baker & McKenzie LLP
San Diego

                                                    15

SDODMS1/711574.6

**C.    The Rates Charged.**

Section 330(a)(3)(B) of the Bankruptcy Code requires that the bankruptcy court consider the rates charged for services.  Generally, the benchmark that is used is the market.  In *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833 (3d Cir. 1994), the court approved the use of credible evidence of market prices in determining the cost of comparable services rendered in non-bankruptcy cases.  The Third Circuit also noted that not only the rates, but the compensation structures generally prevalent in the market, are embraced by *section* 330:

> [W]ith the rise of competitive pressures and the ceaseless evolution of the legal community, we may expect to witness law practitioners adapt to the changed circumstances by developing alternative billing practices and methods.  The strength of the market approach Congress embraced with § 330 is that these developments, including regional variations, will automatically percolate up through bankruptcy fee allotments. While § 330 is not an engine for implementing innovative billing strategies, it will readily accommodate alternative practices once comfortably established in the realm of comparable non-bankruptcy legal services.

*Id*. at 856 (applying the market approach to the role of paralegals in bankruptcy proceedings).

Here, Baker & McKenzie's rates and rate structure are comparable to other comparable firms in San Diego.

**D.    Whether the Fee is Contingent.**

In its application to retain Baker & McKenzie, the Committee sought and the Court approved compensation for Baker & McKenzie as an administrative expense on an hourly basis, plus reimbursement of actual, necessary expenses actually incurred by Baker & McKenzie.  In one sense, however, representation of statutory parties in every bankruptcy case is contingent.  The contingent nature depends on the availability of estate assets to satisfy administrative claims.

In this case, whether the sale of the Debtors' assets would satisfy in full the Secured Creditor Trust's debt was uncertain, and the Debtor did not have sufficient liquid assets at the time of Baker & McKenzie's retention to pay administrative claims, and so the degree of risk to the professionals involved was significant.  Since the Bankruptcy Cases have been converted to Chapter 7 and have thus added another layer of administrative expenses, the risk of non-payment to Chapter 11 professionals is even higher.

1    Baker & McKenzie advised the Committee and provided legal support towards its goal of

2  selling the Debtors' assets (*i.e.*, the restaurants), investigating the liability of the Debtors' directors

3  and officers, and maximizing value for the estate.  The sale of assets is now complete; the D&O

4  Action has been initiated.  However the net sale proceeds, the eventual proceeds, if any, recoverable

5  on the D&O Action, and the ultimate amount of the Chapter 7 Trustee's fees and expenses remain

6  unknown.  Therefore, there is a high risk to Baker & McKenzie that the estate will not recover

7  sufficient proceeds to pay all administrative claims – whether in Chapter 7 or Chapter 11.

8  **E.    The Services Were Necessary and Beneficial to the Estate.**

9    In this Application, Baker & McKenzie has set forth in some detail the activities undertaken

10  and the results obtained by the Committee and Baker & McKenzie.  The Committee has been an

11  active protector of the interests of unsecured creditors in a very challenging economic environment.

12  By quickly assimilating and analyzing the complex issues in the case, the Committee and its

13  professionals attempted to maximize the value of the estate for all parties by facilitating the

14  expeditious sale of the Debtors' assets, participating in the formulation and advancement of the

15  Global Resolution as an efficient exit vehicle from the bankruptcy, investigating the D&O Claims

16  and ultimately bringing the D&O Action **exclusively** on behalf of the estate and its unsecured

17  creditors, and investigating claims against the Secured Creditor Trust.

18    The Conversion, however, should not be used as a measuring stick in determining whether

19  Baker & McKenzie's time and efforts were well-spent or, more importantly, whether Baker &

20  McKenzie and the Committee successfully fulfilled their fiduciary duties to unsecured creditors and

21  the Debtors' estates.  This is so because "in evaluating the award of professional fees, courts

22  **objectively** consider whether the services rendered were reasonably likely to benefit the estate **from**

23  **the perspective of the time when such services were rendered**."  *In re Acme Cake Co.*, 08-41965-

24  CEC, 2010 Bankr. LEXIS 3689, *14 (Bankr. E.D.N.Y. Oct. 18, 2010) (emphasis added) (quoting *In*

25  *re Value City Holdings, Inc.*, 08-14197-JMP, 2010 Bankr. LEXIS 3111, *3 (Bankr. S.D.N.Y. Sept.

26  22, 2010)).  In short, "[r]easonableness of services is not determined through hindsight."  *Id.* at *15

27  (citation omitted) (committee counsel not penalized for time spent on discovery and litigation

28  regarding claims against insiders that were never brought); *see also In re Channel Master Holdings,*

1   *Inc.*, 309 B.R. 855, 861-62 (Bankr. D. Del. 2004) ("Section 330(a)'s 'benefit' and 'necessary'

2   criteria do not require a professional to be 100% successful") (quoting *In re Cenargo Int'l, PLC*, 294

3   B.R. 571, 595 (Bankr. S.D.N.Y. 2003)).

4         Based on the foregoing, Baker & McKenzie should be awarded its requested fees, as they are

5   the product of actual and necessary services rendered by Baker & McKenzie and based upon

6   reasonable amounts of time spent on such services multiplied by a reasonable hourly rate.

7   **F.       Customary Fee for Comparable Services.**

8         Section 330(a)(3)(F) requires that compensation allowed in a bankruptcy case should not be

9   below the level allowed for comparable services in a nonbankruptcy case.  Under this factor, a court

10  assesses the reasonableness of fees of bankruptcy practitioners based market-establishes rates and

11  compensation structures for nonbankruptcy legal services.  This requirement is a departure from

12  prior law governing the allowance of compensation.  The drafters of the Bankruptcy Code

13  abandoned the notions of conservation of the estate and economy of administration which were

14  pivotal concepts in assessing compensation under the prior Bankruptcy Act.  Rather, Congress

15  attempted to attract bankruptcy law specialists to make the adjudication of bankruptcy cases more

16  efficient.  As noted in *Collier on Bankruptcy*:

17  > … the change was based on the fundamental economic principle that
18  > the payment of arbitrarily lower rates to lawyers in bankruptcy
    > proceedings compared to market-established rates for non-bankruptcy
19  > legal service would cause attorneys to leave bankruptcy practice or to
    > refrain from entering bankruptcy practice.  An inherent risk in this
20  > system, as recognized by Congress, is that creditors would have to
    > absorb the cost of improper and inefficient administration.

21  3 COLLIER ON BANKRUPTCY, ¶ 330.03[12].

22        Baker & McKenzie's recap of services rendered, attached to the Mojdehi Declaration as

23  **Exhibit "3"**, depicts the hourly rates charged by the attorneys in Baker & McKenzie as well as the

24  actual total time spent by each attorney and paralegal for services provided in this case.  These rates

25  are comparable to the rates Baker & McKenzie charges its non-bankruptcy clients.

26  **G.       The Experience, Reputation and Ability of the Attorneys Involved.**

27        The qualifications of the attorneys performing services on behalf of the Committee are set

28  forth in **Exhibit "4"** attached to the Mojdehi Declaration.  Baker & McKenzie believes that each of

Baker & McKenzie LLP
San Diego

18

CASE NO. 08-04147-JM11
BAKER & McKENZIE LLP'S FIRST AND FINAL FEE APPLICATION

1    the persons listed on **Exhibit "4"** is highly qualified to perform the services rendered on the

2    Committee's behalf and have billing rates commensurate with similarly qualified attorneys.  Baker

3    & McKenzie submits that it has a well-earned reputation for providing quality legal services.

4    ### VIII.   CONCLUSION

5         The efforts of Baker & McKenzie, as the Committee's counsel, during the Chapter 11 phase

6    of these Bankruptcy Cases resulted in, among other achievements, the filing of the D&O Action,

7    which could result in a significant recovery for the estate and for unsecured creditors, especially

8    since they do not comprise part of the Secured Creditor Trust's collateral.  Thus, for all of the

9    reasons set forth above, Baker & McKenzie respectfully asks that this Court approve the payment

10   and final allowance of compensation as requested, in full.

11        WHEREFORE, Baker & McKenzie requests this Court to enter an order as follows:

12        1.        Approving and awarding as a final payment, fees of $335,397.15 and reimbursement

13   of costs of $1,454.21 for a total amount of $336,851.36; and

14        2.        Granting such other and further relief as is just and proper.

15

16   Dated:  May 19, 2011                          BAKER & McKENZIE LLP

17

18                                               By: /s/ Ali M.M. Mojdehi
19                                                   Ali M.M. Mojdehi
                                                     Brian W. Byun
20                                                   Attorneys for Official Committee of
                                                     Unsecured Creditors

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
San Diego

19

SDODMS1/711574.6

CASE NO. 08-04147-JM11
BAKER & McKENZIE LLP'S FIRST AND FINAL FEE APPLICATION